STATE OF HAWAI'I, Plaintiff–Appellee, v. **PATSY BLANCHE KAHAUNAELE**, Defendant–Appellant

NO. 16885

(CASE NO. TR11 OF 2/10/93)

STATE OF HAWAI'I, Plaintiff–Appellee, v. **JORDAN L. ARMSTRONG**, Defendant–Appellant

NO. 16245

(CASE NO. TR1 – TR4 OF 5/29/92)

STATE OF HAWAI'I, Plaintiff–Appellee, v. **DARLENE A. ACASIA**, Defendant–Appellant

NO. 16248

(CASE NO. 1 AND 2 OF 6/19/92)

STATE OF HAWAI'I, Plaintiff–Appellee, v. **JAMES ROLAND BOLOSAN**, Defendant–Appellant

NO. 16448

(CASE NO. TR6 OF 8/14/92)

**STATE OF HAWAI'I**, Plaintiff–Appellee, v. **CARLOS A. BENITEZ**, Defendant–Appellant

NO. 17320

(CASE NO. TR6 OF 7/7/93)

**STATE OF HAWAI'I**, Plaintiff–Appellee, v. **DARNELL M. LANE**, Defendant–Appellant

NO. 16928

(D.C. COMPLAINT NO. 3433012MO)

**STATE OF HAWAI'I**, Plaintiff–Appellee, v. **FLORENCE H. MOSES**, Defendant–Appellant

NO. 17222

(CASE NO. TR2P OF 6/2/93)

AUGUST 23, 1994

BURNS, C.J., HEEN, AND WATANABE, JJ.

## OPINION OF THE COURT BY BURNS, C.J.

On July 29, 1990, defendant Patsy Blanche Kahaunaele (Kahaunaele) was cited for Operating a Vehicle Without No–Fault Insurance (OAVWONFI), Hawai'i Revised Statutes (HRS) § 431:10C–104 (Supp. 1992). At the trial on February 10, 1993, it was stipulated that Kahaunaele was driving a vehicle that she borrowed from her boyfriend's sister, the sister operated the vehicle daily, and the sister was not at home when Kahaunaele borrowed the vehicle.

On December 20, 1991, defendant Jordan L. Armstrong (Armstrong) was cited for OAVWONFI. At the trial on May 29, 1992, the evidence presented was that Armstrong was driving the car of a good friend, he "asked [his friend] if there was insurance on it and [his friend] said yes and then [his friend] showed [him] a card[,]" but Armstrong did not see on the card "when [the no–fault insurance] expired or when was the effective date of the card[.]"

On December 29, 1991, Darlene A. Acasia (Acasia) was cited for OAVWONFI. At the trial on June 19, 1992, it was stipulated that Acasia was driving a borrowed truck and that she had not inquired whether or not it was covered by no–fault insurance.

On March 29, 1992, defendant James Roland Bolosan (Bolosan) was cited for OAVWONFI. At the trial on August 14, 1992, the evidence presented was that Bolosan was driving his father's car and assumed that it was properly insured.

On March 29, 1992, defendant Carlos A. Benitez (Benitez) was cited for OAVWONFI. At the trial on July 7, 1993, the evidence presented was that the car was owned by Benitez's co–worker and that the co–worker was in the car and intoxicated when Benitez was cited.

On November 10, 1992, defendant Darnell M. Lane (Lane) was cited for OAVWONFI. At the trial on February 10, 1993, it was stipulated that Lane was driving a vehicle that he borrowed from his friend. The vehicle was owned by Lane's friend's brother–in–law, and Lane did not know the vehicle was uninsured.

On January 26, 1993, defendant Florence H. Moses (Moses) was cited for OAVWONFI. At the trial on June 2, 1993, the evidence presented was that Moses, after knowing her neighbor for approximately two months, borrowed her neighbor's car without inquiring whether the car was insured. Moses had previously been cited, on December 4, 1988 and June 14, 1991, for OAVWONFI. There was no evidence that the other two citations involved her neighbor's car.

The first question is whether these defendants presented evidence of an HRS § 431:10C–117(a)(2) (Supp. 1992) good faith defense and/or an HRS § 431:10C–117(a)(2)(C) (Supp. 1992) reasonable belief

defense. If they did, the second question is whether the State satisfied its burden under HRS § 702–205 (1985) to negative these defenses.

An understanding of the good faith defense and the reasonable belief defense to a charge of OAVWONFI requires an understanding of their legislative and judicial histories.

HRS chapter 294 (1985), which was repealed effective July 1, 1988, stated in relevant part as follows:

§ 294–8 Conditions of operation and registration. (a)(1) No person shall operate or use a motor vehicle upon any public street, road, or highway of this State at any time unless such motor vehicle is insured at all times under a no–fault policy.

§ 294–8.5 Verification of insurance. (a) Every insurer shall issue to its insureds a no–fault insurance identification card for each motor vehicle for which the basic no–fault coverage is written showing the name and make and the factory or serial number of the motor vehicle, policy number, names of the insured and the insurer, and the effective dates of coverage, including the expiration date; . . . . The identification card shall be in the insured motor vehicle at all times and shall be exhibited to a law enforcement officer upon demand.

§ 294–8.6 Unlawful use of no–fault insurance card. It shall be a violation of this chapter for any person who makes, issues, or knowingly uses any fictitious, or fraudulently altered no–fault insurance identification card, or any person who displays or causes or permits to be displayed a no–fault insurance identification card

knowing that the no–fault policy was cancelled as provided in section 294–9.

*State v. Lesher*, 66 Haw. 534, 669 P.2d 146 (1983), concluded that

By operating the vehicle in question without ascertaining that there was a valid, current no–fault card in the vehicle, appellant acted recklessly with respect to whether her conduct in driving the vehicle was in violation of § 294–8(a)(1), HRS. There were, accordingly, sufficient facts to sustain her conviction [of OAVWONFI].

66 Haw. at 537, 669 P.2d at 148.

Effective July 1, 1988, HRS chapter 294 (1985) was replaced by an Insurance Code, HRS chapter 431 (1987 Special Pamphlet). The subject of HRS chapter 431, article 10C is motor vehicle insurance. It states in relevant part as follows:

§ 431:10C–104 Conditions of operation and registration of motor vehicles. (a) . . . no person shall operate or use a motor vehicle upon any public street, road or highway of this State at any time unless such motor vehicle is insured at all times under a no–fault policy.

§ 431:10C–107 Verification of insurance: motor vehicles. (a) Every insurer shall issue to its insureds a no–fault insurance identification card for each motor vehicle for which the basic no–fault coverage is written. The identification card shall contain the following:

\* \* \*

(4) Effective dates of coverage including the expiration date.

(b) The identification card shall be in the insured motor vehicle at all times and shall be exhibited to a law enforcement officer upon demand.

\* \* \*

·§ 431:10C–108 **Unlawful use of no–fault insurance identification card.** It shall be a violation of this article:

(1) For any person to make, issue or knowingly use any fictitious or fraudulently altered no–fault insurance identification card; or

(2) For any person to display or cause or permit to be displayed a no–fault insurance identification card knowing that the no–fault policy was canceled as provided in section 431:10C–111 and section 431:10C–112.

Effective June 14, 1988, Act 345, § 1, 1988 Haw. Sess. Laws 659, amended the penalty provisions in HRS § 431:10C–117(a)(2). Most relevantly, it added the following defense:

provided that any person cited under this section shall have an opportunity to present a good faith defense, including but not limited to lack of knowledge or proof of insurance.

On February 16, 1990, *State v. Palpallatoc*, 71 Haw. 178, 787 P.2d 214 (1990), held that "in order to satisfy the good faith defense of lack of knowledge, the borrower of a vehicle must at least inquire of the owner whether or not the vehicle is insured." *Id.* at 182, 787 P.2d at 216.

The 1990 Senate Consumer Protection and Commerce Committee responded to *Palpallatoc* in relevant part as follows:

> Your committee considered amendments to the statute's exculpatory language regarding 'lack of knowledge ... of insurance', but decided that the current language was sufficient. However, recognizing a possible need to clarify the legislative intent, your Committee uses this report as a means to clearly express that intent. Specifically, we find it reasonable for a driver who borrows a car to assume that the borrowed vehicle is insured. The reasonableness of this assumption derives from the mandatory provisions of our automobile insurance laws. The assumption is, however, rebuttable by proof of knowledge of the uninsured status of the vehicle.

Sen. Stand. Comm. Rep. No. 2164, in 1990 Senate Journal, at 929.

Further action by the 1990 legislature resulted in Act 167, § 1, 1990 Haw. Sess. Laws 328, effective June 19, 1990, which amended HRS § 431:10C–117(a). As amended, HRS § 431:10C–117(a) states in relevant part as follows:

> (a) (1) Any person subject to this article in the capacity of the operator, owner, or registrant of a motor vehicle in this State, or registered in this State, who violates any applicable provision of this article, shall be subject to citation for the violation by any county police department ....
>
> (2) Notwithstanding any provision of the Hawai'i Penal Code, each violation shall

be deemed a separate offense and shall be subject to a fine of not less than $100 nor more than $5,000 which shall not be suspended; provided that if the person is convicted of not having had a no–fault policy in effect at the time the citation was issued, the fine shall be $1,000 for the first offense and a minimum of $3,000 for each subsequent offense; provided however, that upon request, the judge may grant community service in lieu of the fine, of not less than 75 hours and not more than 100 hours for the first offense, and not less than 200 hours nor more than 275 hours for the second offense; the judge may grant community service in lieu of the fine for subsequent offenses at the judge's discretion. In addition to the fine in this paragraph, if any person operates a motor vehicle without a valid no–fault policy in effect insuring the driver or registered owner, or both, either the driver's license of the driver and of the registered owner shall be suspended for three months or they shall be required to maintain proof of financial responsibility pursuant to section 287–21(2), (3), or (4) and keep a nonrefundable no–fault insurance policy in force for six months; provided that if the violation is a subsequent offense of driving without a valid no–fault policy, the driver's licenses of the driver and the

registered owner shall be suspended for one year; and provided further that any person cited under this section shall have an opportunity to present a good faith defense, including but not limited to lack of knowledge or proof of insurance. The general penalty provision of this section shall not apply to:

(A) Any operator of a motor vehicle owned by another person if the operator's own insurance covers such driving; or

(B) Any operator of a motor vehicle owned by that person's employer during the normal scope of that person's employment; or

(C) Any operator of a borrowed motor vehicle if the operator holds a reasonable belief that the subject vehicle is insured.

(3) In the case of multiple violations, the court, in addition to any other penalty, shall impose the following penalties:

(A) Imprisonment of not more than thirty days;

(B) Suspension or revocation of the motor vehicle registration plates of the vehicle involved;

(C) Impoundment, or impoundment and sale, of the motor vehicle for the costs of storage and other charges incident to seizure of the vehicle, or any other

cost involved pursuant to section
431:10C–301; or

(D) Any combination of those penalties.

\* \* \*

A Senate Conference Committee report states the intent of this amendment:

> Because of the recent Hawai['[i Supreme Court decision in *State vs. Palpallatoc* which requires an affirmative duty on the part of a motor vehicle borrower to ask whether or not the vehicle is insured before borrowing it, the House had added clarifying language of a good faith defense for drivers of borrowed motor vehicles. The language was added to specifically address the intent of the Legislature to allow for the defense of lack of knowledge and not require the duty imposed in the *Palpallatoc* case.
>
> On the other hand, there may be instances in which a person borrowing a vehicle should affirmatively ascertain whether it is insured. Therefore, your Committee has amended this bill to address the issues raised in the recent *Palpallatoc* case, by adding a provision to Section 431:10C–117(a), which creates a standard for determining when a borrower of a vehicle is not subject to the penalties provided therein. Specifically, if a borrower of a vehicle holds a reasonable belief that it is insured, he has no duty to affirmatively ascertain whether the motor vehicle is insured. Thus, the fact that the borrower of the vehicle does not inquire as to whether or not the vehicle is insured, should not of itself, subject the borrower to the penalties in the law. A court may

530

determine on a case–by–case basis whether a person's failure to ascertain coverage was reasonable under the circumstances.

Sen. Conf. Comm. Rep. No. 113, in 1990 Senate Journal, at 813–14.

A later Senate Conference Committee report further states the intent of the 1990 amendment:

Your Committee takes the position that a person borrowing a vehicle need not always be under a duty to affirmatively ascertain whether or not the vehicle is insured. To the contrary, your Committee is of the opinion that a person has a right to reasonably believe that a borrowed vehicle is insured, as all vehicles are required to carry coverage by law. However, your Committee recognizes that there may be instances in which a person borrowing a vehicle should affirmatively ascertain whether it is insured. Accordingly, your Committee amends the bill to address the issues raised in the recent *Palpallatoc* case, by adding a provision to Section 431:10C–117(a), which creates a standard for determining when a borrower of a vehicle is not subject to the penalties provided therein. Specifically, if a borrower of a vehicle holds a reasonable belief that it is insured, he has no duty to affirmatively ascertain coverage. In this regard, a court can review on a case–by–case basis whether a person's failure to ascertain coverage was reasonable under the circumstances.

Sen. Conf. Comm. Rep. No. 2616, in 1990 Senate Journal, at 1090–91.

Thus, the chronology is as follows. In 1983, *State v. Lesher, supra,* held that a person who operates a borrowed motor vehicle without ascertaining that there is a valid, current no–fault card in the vehicle is guilty of OAVWONFI unless he or she proves that the motor vehicle is in fact insured. Effective June 14, 1988, the legislature authorized the good faith defense. In 1990, the Hawai'i Supreme Court held in *Palpallatoc* that a failure to inquire negatives the good faith defense. In response, the 1990 legislature added a reasonable belief defense and stated that "a person has a right to reasonably believe that a borrowed vehicle is insured, as all vehicles are required to carry coverage by law. However, your Committee recognizes that there may be instances in which a person borrowing a vehicle should affirmatively ascertain whether it is insured."

In other words, pursuant to the HRS § 431:10C–117(a)(2) good faith defense and the HRS § 431:10C–117(a)(2)(C) reasonable belief defense, the borrower of a motor vehicle has a statutory right to reasonably believe that the borrowed motor vehicle is insured. Evidence that the defendant borrowed and operated upon a public street a motor vehicle that was not insured under a no–fault policy is sufficient evidence to sustain both the reasonable belief defense and the good faith defense. The fact that the borrower did not consider whether or not the borrowed motor vehicle was insured does not negative either defense. However, if one or more relevant facts reasonably required the borrower to inquire, he or she then had a duty to inquire until he or she reasonably believed that the motor vehicle was insured. The borrower's failure to satisfy that duty to inquire negatives both defenses.

Armstrong inquired whether the vehicle was or was not covered by no–fault insurance. His friend, the vehicle owner, answered in the affirmative and showed Armstrong a card. On the card, Armstrong saw the name of the insurer and the insured. Armstrong presumed the card was valid and did not look on the card to see the effective date or the expiration date of the insurance coverage.

The record does not indicate why Armstrong inquired whether the vehicle was or was not covered by no–fault insurance. There is no evidence of any relevant fact or facts that reasonably required him to do so. His friend's response did not generate a duty upon Armstrong to inquire further. His friend's showing him a no–fault insurance card did not generate a duty upon Armstrong to verify that the card showed that the vehicle was covered by no–fault insurance. Therefore, the facts that Armstrong was shown a no–fault insurance card but did not read the effective date and the expiration date of the insurance coverage did not negative the HRS § 431:10C–117(a)(2) good faith defense and the HRS § 431:10C–117(a)(2)(C) reasonable belief defense.

In each of the other cases, no relevant fact or facts reasonably required the defendant to inquire whether the vehicle was or was not covered by no–fault insurance.

Accordingly, we reverse the district court's convictions of the following defendants of the following judgments convicting them of Operating a Vehicle Without No–Fault Insurance, HRS § 431:10C–104:

| APPEAL | DEFENDANT | CITATION DATE | JUDGMENT DATE |
|--------|-----------|---------------|---------------|
| 16885 | Patsy Blanche Kahaunaele | July 29, 1990 | February 10, 1993 |
| 16245 | Jordan L. Armstrong | December 20, 1991 | May 29, 1992 |

| 16248 | Darlene A. Acasia | December 29, 1991 | June 19, 1992 |
| 16448 | James Roland Bolosan | March 29, 1992 | August 14, 1992 |
| 17320 | Carlos A. Benitez | March 29, 1992 | July 7, 1993 |
| 16928 | Darnell M. Lane | November 10, 1992 | February 10, 1993 |
| 17222 | Florence H. Moses | January 26, 1993 | June 2, 1993 |

## No. 16885

*Emmett E. Lee Loy*, Deputy Public Defender, on the briefs for defendant–appellant.

*Alexa D. M. Fujise*, Deputy Prosecuting Attorney, City and County of Honolulu, on the brief for plaintiff–appellee.

## No. 16245

*Walter J. Rodby*, Deputy Public Defender, on the briefs for defendant–appellant.

*James H. S. Choi*, Deputy Prosecuting Attorney, City and County of Honolulu, on the brief for plaintiff–appellee.

## No. 16248

*Richard W. Pollack*, Public Defender (*Varkey L. James* and *Toby M. Tonaki*, Certified Law Students, University of Hawaiʻi) on the brief for defendant–appellant.

*James H. S. Choi*, Deputy Prosecuting Attorney, City and County of Honolulu, on the brief for plaintiff–appellee.

## No. 16448

*Lanson K. Kupau*, Deputy Public Defender, on the opening brief and *Theodore Y. H. Chinn*, Deputy Public Defender, on the reply brief for defendant–appellant.

*James H. S. Choi*, Deputy Prosecuting Attorney, City and County of Honolulu, on the brief for plaintiff–appellee.

**No. 17320**
*James S. Tabe*, Deputy Public Defender, on the brief for defendant–appellant.
*Carolyn Plett*, Deputy Prosecuting Attorney, City and County of Honolulu, on the brief for plaintiff–appellee.

**No. 16928**
*Donald L. Wilderson*, Deputy Public Defender, on the briefs for defendant–appellant.
*Caroline M. Mee*, Deputy Prosecuting Attorney, City and County of Honolulu, on the brief for plaintiff–appellee.

**No. 17222**
*Ronald T. Ogomori*, Deputy Public Defender, on the brief for defendant–appellant.
*Patricia A. Loo*, Deputy Prosecuting Attorney, City and County of Honolulu, on the brief for plaintiff–appellee.