949 P.2d 171

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Wendy SHAMP, Defendant–Appellant.**

No. 17808.

Intermediate Court of Appeals of Hawai'i.

Nov. 18, 1997.

Richard N. Wurdeman, Deputy Public Defender, on the brief, for defendant-appellant.

Mark R. Simonds, Deputy Prosecuting Attorney, County of Maui, on the brief, Wailuku, for plaintiff-appellee.

Before BURNS, C.J., and WATANABE and KIRIMITSU, JJ.

1. Defendant-Appellant Wendy Shamp (Defendant) was also convicted of operating a vehicle without a certificate of inspection, in violation of Hawai'i Revised Statutes (HRS) § 286–25 (1993), and fraudulent use of plates, tags or emblems and other misdemeanors, in violation of HRS § 249–11 (1993). However, these convictions are not the bases for this appeal.

2. HRS § 431:10C–104 (1993) provides:

Conditions of operation and registration of motor vehicles. (a) Except as provided in section 431:10C–105, no person shall operate or use a motor vehicle upon any public street, road or highway of this State at any time unless such motor vehicle is insured at all times under a no-fault policy.

(b) Every owner of a motor vehicle used or operated at any time upon any public street, road or highway of this State shall obtain a no-fault policy upon such vehicle which provides the coverage required by this article and shall maintain the no-fault policy at all times for the entire motor vehicle registration period.

(c) Any person who violates the provisions of this section shall be subject to the provisions of section 431:10C–117(a).

(d) The provisions of this article shall not apply to any vehicle owned by or registered in the name of any agency of the federal government.

KIRIMITSU, Judge.

Defendant-Appellant Wendy Shamp (Defendant) was convicted of, among other charges,[1] Operating a Vehicle Without No-Fault Insurance, Hawai'i Revised Statutes (HRS) § 431:10C–104 (1993) (or chapter 431).[2] Defendant appeals from the District Court of the Second Circuit's February 1, 1994 judgment and denial of her motion for a judgment of acquittal as to the HRS § 431:10C–104 offense. For the reasons set forth below, we reverse the district court's conviction of Defendant as to the HRS § 431:10C–104 offense on the grounds that the court committed plain error because the State of Hawai'i (the State) did not prove all of the elements necessary for conviction. We affirm the court's convictions of Defendant in regards to her violations of HRS § 286–25 (1993) and HRS § 249–11 (1993). As guidance to the prosecutor's office and the district court, we also conclude that the district court erred by not following the procedures set forth in HRS § 805–13(b) (1993).[3]

## I. BACKGROUND

This case involves a no-fault insurance violation that is relatively common. The under-

3. HRS § 805–13 (1993) is a criminal procedure statute, of which subsection (b) is at issue in the instant case. In pertinent part, § 805–13 provides:

Motor vehicle insurance violation. (a) In all cases of citation for alleged violations of chapter 294 or section 286–116, the court shall hear and dispose of such actions expeditiously. Such actions may be severed from any other proceedings to facilitate immediate disposition. Continuance of proceedings on motor vehicle insurance violations may be allowed in the discretion of the court, only after the court has received evidence that the required insurance on the motor vehicle involved was in fact in force on the date of the citation, or that the motor vehicle has been, or is ordered by the court to be, impounded.

(b) In all cases of citation for alleged violations of chapter 294 or section 286–116 *the court shall require the appearance of the driver cited and the registered owner of the motor vehicle. If the registered owner is not the driver, the registered owner shall be cited by service of the citation on the driver who shall be deemed to be the owner's agent for purposes of service and by naming the owner jointly with the driver in the citation....*

HRS § 805–13(a),(b) (1993) (emphasis added).

lying facts are undisputed. On September 21, 1993, Maui police officer William Hankins (Officer Hankins) stopped Defendant's car at Kepaniwai Park for having a delinquent auto tax and expired safety tags. When Officer Hankins asked Defendant for proof of no-fault insurance or other form of bonds, surety or self-insurance, as required by statute, Defendant failed to produce such evidence. Defendant was the driver of the car, though not its registered owner.

At trial, Defendant also produced no evidence of insurance. The court listened to Officer Hankins' testimony and the arguments of the State and Defendant, but at no time required the vehicle's registered owner (the owner) to appear in court. At the conclusion of the State's case, Defendant filed a motion for judgment of acquittal in regards to the insurance violation, contending that, pursuant to HRS § 805–13(b), the court's judgment against Defendant was procedurally flawed. HRS § 805–13(b) provides that "[i]n all cases of citation for alleged violations of chapter 294 or section 286–116 the court *shall require the appearance of the driver cited and the registered owner* of the motor vehicle." (Emphasis added.) Defendant argued that the trial court's failure to "require the appearance of the ... registered owner of the motor vehicle" was grounds for dismissing the insurance charge against Defendant. *Id.*

The district court denied the motion. Defendant rested her case without introducing any evidence and the court decided:

> That on September the 20th, 1993, (inaudible) a public—within Honokowai [Honokōwai][4] Park, considered a public roadway, [Defendant] was seated behind a wheel of a two door Datsun. Defendant was in the driver's seat.

> Probable cause for the stop, traffic stop, was that the bumper and the license plate of the vehicle operated by defendant indicated that the safety sticker and tax had

expired and that the tax was delinquent and the safety sticker had expired.

> Upon the stop the police officer is required by law to ask [Defendant] to produce the no-fault insurance card which she was unable to do. Nor did she produce evidence of self-insurance. *No explanation as to why there was no insurance.*

> The vehicle was privately owned and was (inaudible). Exhibit 1 in evidence indicates ownership of the vehicle and that the vehicle was not exempt from no-fault insurance and the safety sticker had expired and the (inaudible) also expired.

> *Therefore the Court finds that on said date the vehicle operated by [Defendant] was being operated on a public highway when that vehicle was not then insured by a policy of no-fault insurance as required by Chapter 431.*

> Further finds that the tax was delinquent and there was no valid safety sticker on said vehicle.

> The Court finds [Defendant] guilty of all charges....

(Emphases added.) The court fined Defendant $500 and revoked her license for three months, pending the disposition of this appeal. Defendant filed a timely notice of appeal on May 11, 1994.

## II. *STANDARD OF REVIEW*

"[A]lthough points of error not raised on appeal in accordance with Hawai'i Rules of Appellate Procedure (HRAP) Rule 28(b)(4) will ordinarily be disregarded, this court, at its option, may notice a plain error not presented." *State v. Schroeder,* 76 Hawai'i 517, 532, 880 P.2d 192, 207 (1994). In the interest of justice, the court may take notice of plain errors not presented by either party on appeal. *See* HRAP Rule 28(b)(4)(D); *see also* Hawai'i Rules of Penal Procedure (HRPP) Rule 52(b) ("[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.").

---

4. While the judge, in the transcript recorded on December 27, 1993, states that the citation occurred at "Honokowai [Honokōwai] Park," Officer William Hankins and Defendant's recitation of the facts allege it occurred at "Kepaniwai Park." In any case, this factual discrepancy is not material. We will assume that the citation occurred at Kepaniwai Park in the County of Maui.

■ Plain error may occur where "substantial evidence" does not support every material element of the crime. *State v. Batson*, 73 Haw. 236, 248–49, 831 P.2d 924, 931, *reconsideration denied*, 73 Haw. 625, 834 P.2d 1315 (1992). Substantial evidence "is credible evidence which is of sufficient quality and probative value to enable a [person] of reasonable caution to support a conclusion." *Id.* Whether substantial evidence supports the conviction "is to be determined by an appellate court upon review of the evidence adduced in the light most favorable to the prosecution." *State v. Naeole*, 62 Haw. 563, 565, 617 P.2d 820, 823 (1980) (citing *Byrnes v. United States*, 327 F.2d 825 (9th Cir. 1964)).

In the instant case, the inquiry is whether the district court's conviction of Defendant was supported by "substantial evidence." We hold that it was not.

## III. *DISCUSSION*

The sole point of error Defendant raises on appeal is that the district court's failure to require the registered owner of the vehicle to appear in court was, pursuant to HRS § 805–13(b), reversible error. We need not address this issue because we hold that the State failed to prove one of the three necessary elements for an HRS § 431:10C–104 violation, and, therefore, the district court committed plain error in convicting Defendant. For the reasons stated below, we reverse the district court's conviction.

However, in order to guide the district court, the prosecutor's office, and enforcement officers, we further hold that the court erroneously failed to follow the procedures set forth in HRS § 805–13. We discuss this error because it is important that, in future cases, the district court, the prosecutor's office, and enforcement officers follow the mandates set forth in HRS § 805–13.

**5.** HRS § 701–114 (1993) provides:
    **Proof beyond a reasonable doubt.** (1) Except as otherwise provided in section 701–115 [ (regarding defenses) ], no person may be convicted of an offense unless the following are proved beyond a reasonable doubt:
        (a) Each element of the offense;
        (b) *The state of mind required to establish each element of the offense;*

### A. *The District Court's Conviction of Defendant Constituted Plain Error.*

Defendant presents no objections to the district court's finding that she was guilty of violating HRS § 431:10C–104; rather, she argues that her motion for judgment of acquittal should have been granted due to a procedural error. We review her conviction as a threshold inquiry into the soundness of the district court's denial of Defendant's motion for judgment of acquittal.

Normally, this court will not review questions not presented to it on appeal, though it can take notice of "plain errors[.]" *State v. Nguyen*, 81 Hawai'i 279, 292–93, 916 P.2d 689, 702–03 (1996); HRAP Rule 28(b)(4)(D). Though the "court's power to deal with plain error is one to be exercised with caution," *Nguyen*, 81 Hawai'i at 292, 916 P.2d at 702, an appellate court may, on its own motion, " 'notice errors to which no exception has been taken, if the errors are obvious, or if they otherwise seriously affect the fairness, integrity or public reputation of judicial proceedings.' " *Id.* at 293, 916 P.2d at 703 (quoting *United States v. Atkinson*, 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936)).

■ In a criminal case, the State has the burden of proving all elements of the offense beyond a reasonable doubt. HRS § 701–114(1) (1993):[5] In the instant case, two issues are presented in regards to whether the State met its burden of proving, beyond a reasonable doubt, all the elements of an HRS § 431:10C–104 offense: (1) Is the state of mind of a defendant an element of an HRS § 431:10C–104 violation; and (2) if so, did the prosecution prove it beyond a reasonable doubt. Although the law was previously unclear regarding the first issue, we now hold that the state of mind of a defendant is

        (c) Facts establishing jurisdiction;
        (d) Facts establishing venue; and
        (e) Facts establishing that the offense was committed within the time period specified in section 701–108.
    (2) In the absence of the proof required by subsection (1), the innocence of the defendant is presumed.
(Emphasis added.)

an element of an HRS § 431:10C–104 offense. Moreover, there is a statutory "reasonable belief" presumption underlying this element; the court must presume that the borrower of a motor vehicle reasonably believed that the vehicle was insured. Thus, in order to convict a defendant, the State must prove that the state of mind of a person who borrowed an uninsured motor vehicle was "knowing" or, in certain circumstances, "reckless." Construing the facts in the light most favorable to the prosecution, we conclude that the district court committed plain error because the State failed to prove this state-of-mind element.

1. *State of mind is an element of an HRS § 431:10C–104 offense.*

Previously, in order to convict a defendant of failing to possess no-fault insurance, the State had the burden of proving: "(1) the motor vehicle was being operated on a public highway[;] (2) the vehicle was not insured under a no-fault policy[;] and (3) the operator was either the owner or, if not the owner,

had knowledge of or acted recklessly by not 'ascertaining that there was a valid, current no-fault card in the vehicle.'" *State v. Arakaki,* 7 Haw.App. 48, 51, 744 P.2d 783, 785 (1987)[6] (quoting *State v. Lesher,* 66 Haw. 534, 537, 669 P.2d 146, 148 (1983)), *overruled on other grounds, State v. Dow,* 72 Haw. 56, 806 P.2d 402 (1991). The first two elements of the offense are not at issue in the instant case; they are statutorily required elements that the district court properly found Defendant guilty of violating. *See* HRS § 431:10C–104(a).

Rather, in the instant case, the third "state-of-mind" element is the problematic one. At no time did the State inquire into or prove that Defendant, as the driver of the motor vehicle but not its registered owner, had the requisite state of mind (i.e., knowing or recklessly not knowing that the vehicle was uninsured). On appeal, the State concedes the necessity of proving the three elements, but apparently assumes that the State's burden to prove the third element arises only if a defendant presents a "good faith" defense.[7] However, the State relies on

---

6. In *State v. Arakaki,* 7 Haw.App. 48, 744 P.2d 783 (1987), the offense with which the defendant was charged was a no-fault insurance violation, pursuant to HRS § 294–8(a) (1985). Chapter 294 was repealed in 1987 and replaced by chapter 431, articles 10C and 10G. HRS § 294–8 is very similar to the current HRS § 431:10C–104. *See supra* n. 2. HRS § 294–8 provided:

    **Conditions of Operation.** (a)(1) No person shall operate or use a motor vehicle upon any public street, road, or highway of this State at any time unless such motor vehicle is insured at all times under a no-fault policy. Every owner of a motor vehicle used or operated at any time upon any public street, road, or highway of this State shall obtain a no-fault policy upon such vehicle which provides the coverage required by this chapter and shall maintain the no-fault policy at all times for the entire motor vehicle registration period.

    (2) The requirements of this subsection may be satisfied by any owner of a motor vehicle if:

      (A) Such owner provides a surety bond, proof of qualifications as a self-insurer, or other securities affording security substantially equivalent to that afforded under a no-fault policy, providing coverage at all times for the entire motor vehicle registration period, as determined and approved by the commissioner under regulations, and

      (B) The commissioner is satisfied that in case of injury or death or property damage,

any claimant would have the same rights against such owner as the claimant would have had if a no-fault policy had been applicable to such vehicle.

    (b) Any person who violates the provisions of subsection (a) shall be subject to the provisions of subsection 294–39(a) [regarding penalties].

    (c) The provisions of this chapter shall not apply to any vehicle owned by or registered in the name of any agency of the federal government.

7. Undoubtedly, previous legislation and case law have not clearly outlined whether the third "state-of-mind" element is a defense or a prima facie element of an HRS § 431:10C–104 conviction. However, the legislature and the judiciary have subsequently clarified the presumption that a person has a right to reasonably believe that a vehicle he or she has borrowed is insured. *See* Sen. Stand. Comm. Rept. No. 2164, in 1990 Senate Journal, at 929; *State v. Bolosan,* 78 Hawai'i 86, 90–92, 890 P.2d 673, 677–79 (1995); *State v. Kahaunaele,* 10 Haw.App. 519, 531, 879 P.2d 566, 571 (1994). As a matter of policy, this interpretation also upholds the legislature's intent to protect "innocent" borrowers of vehicles and penalizes the true culprits—the owners of the vehicles—which effectuates the legislature's intent to ensure that all motor vehicles are properly insured.

old law[8] because this is no longer the condition of Hawai'i's insurance code or state law.

In order to understand this third element and clarify our holding, we will briefly discuss the evolution of the state-of-mind requirement.[9] In *State v. Lesher*, 66 Haw. at 536–37, 669 P.2d at 147–48, the Hawai'i Supreme Court held that pursuant to HRS § 702–204 (1993),[10] an insurance violation required, at least, the driver of a borrowed vehicle to possess a knowing or reckless state of mind. The court further held that where a driver who was not the owner of the vehicle committed a no-fault insurance violation, the court should, in effect, *presume* that the driver acted recklessly "[b]y operating the vehicle in question without ascertaining that there was a valid, current no-fault card in the vehicle...." *Id.* at 537, 669 P.2d at 148. In particular, the court held that "[a]ll citizens are charged with knowledge of the law. It is therefore incumbent upon the borrower of a vehicle to ascertain whether or not there is a current no-fault insurance card in the vehicle." *Id.* Thus, the State's burden of proof was easily satisfied when Defendant presented a good faith "lack of knowledge" defense to the charge because, under *Lesher*, the presumption was that the defendant had knowledge of the uninsured status of the vehicle he or she was driving.

The decision in *Lesher* was affirmed and clarified in two subsequent cases, *State v. Arakaki* and *State v. Palpallatoc*, 71 Haw. 178, 787 P.2d 214 (1990), *overruled by State v. Bolosan*, 78 Hawai'i 86, 90, 890 P.2d 673, 677 (1995). However, the state legislature took issue with *Palpallatoc's* holding, Sen. Stand. Comm. Rep. No. 2616, in 1990 Senate Journal, at 1091, which placed an affirmative duty upon the borrower of a motor vehicle to inquire into the vehicle's insurance status. *Palpallatoc*, 71 Haw. at 182, 787 P.2d at 216. Thus, in 1990 the legislature revised HRS § 431:10C–117 (1993), the penalty portion of the insurance code.[11] Under this revision, a

8. The State of Hawai'i (the State) may have been mistaken regarding the law in this area, as evidenced by its reliance on somewhat outdated law in regards to the third element of an HRS § 431:10C–104 violation (the state-of-mind element). In particular, *State v. Palpallatoc*, 71 Haw. 178, 787 P.2d 214 (1990), has been overruled by the Hawai'i Supreme Court as well as by the state legislature, as discussed in the above text.

9. We have already discussed, in detail, the history of the third element of a no-fault insurance violation in *Kahaunaele*. We therefore will not repeat ourselves here, but do find a brief recitation of background materials necessary.

10. HRS § 702–204 (1993) provides:

> **State of Mind Required.** Except as provided in section 702–212, a person is not guilty of an offense unless the person acted intentionally, knowingly, recklessly, or negligently, as the law specifies, with respect to each element of the offense. *When the state of mind required to establish an element of an offense is not specified by the law, that element is established if, with respect thereto, a person acts intentionally, knowingly, or recklessly.*

(Emphasis added); *but see* HRS § 702–212(1) and Commentary (1993) (providing that an offense for which conviction can only result in a fine or other "civil" penalty does *not* fall under § 702–204, *unless* a legislative purpose to impose culpability "plainly appears"). Because the legislature has declared an intent to provide a state-of-mind requirement, we interpret HRS § 702–

204 to apply to violations of chapter 431, article 10C. As the court in *State v. Lesher* reasoned, "[w]e do not ascertain, from the statute, any legislative purpose to impose absolute penal liability on such innocent [drivers]." *State v. Lesher*, 66 Haw. 534, 537, 669 P.2d 146, 148 (1983). More recently, the court in *State v. Bolosan*, 78 Hawai'i at 90, 890 P.2d at 676, stated that

> [Senate Standing Committee Report No. 2164, in 1990 Senate Journal, at 929] *clearly indicates* that the legislature had originally intended that it would be considered "reasonable for a driver who borrows a car to assume that the borrowed vehicle is insured" and that such an assumption would only be "rebuttable by proof of [the driver's] knowledge of the uninsured status of the vehicle."

(Emphasis added.) From these interpretations, coupled with HRS §§ 702–204 and 701–114, *supra* n. 5, we conclude that "knowing or reckless" is the proper state-of-mind requirement for an HRS § 431:10C–104 violation.

11. HRS § 431:10C–117(a) (1993) codified the 1990 legislative revisions and provides, in pertinent part:

> **Penalties.**
> (a) (1) Any person subject to this article in the capacity of the operator, owner, or registrant of a motor vehicle in this State, or registered in this State, who violates any applicable provision of this article, shall be subject to citation for the violation by any county police department in a form and

driver of a borrowed vehicle is presumed to hold a "reasonable belief" that the vehicle he or she is driving is insured.[12] The 1990 revision created the reverse presumption from that created in *Lesher* and *Palpallatoc:* rather than presuming recklessness, the legislature clarified that when a person borrows a car from another, the act of borrowing the

manner approved by the violations bureau of the district court of the first circuit.
. . . .
(3) In addition to the fine in [paragraph (2)], if any person operates a motor vehicle without a valid no-fault policy in effect insuring the driver or registered owner, or both, either the driver's license of the driver and of the registered owner shall be suspended for three months or they shall be required to maintain proof of financial responsibility ... and keep a nonrefundable no-fault insurance policy in force for six months; provided that if the violation is a subsequent offense of driving without a valid no-fault policy, the driver's licenses of the driver and the registered owner shall be suspended for one year; and provided further that *any person cited under this section shall have an opportunity to present a good faith defense, including but not limited to lack of knowledge or proof of insurance.* The general penalty provision of this section shall not apply to:
. . . .
(C) Any operator of a borrowed motor vehicle if the operator holds a *reasonable belief* that the subject vehicle is insured.

HRS § 431:10C–117(a)(1), (3)(C) (emphases added). We note that HRS § 431:10C–117 (1993) was amended in 1996. 1996 Sess. L. Act 20, at 30–33. While § 431:10C–117(a)(3) was largely unchanged by the 1996 amendment in regards to the good faith defense, the legislature did change the penalty provisions, providing that "the driver's license of the driver *or* the registered owner shall be suspended for one year and the driver *or* the registered owner shall be required to maintain proof of financial responsibility pursuant to section 287–20." HRS § 431:10C–117(a)(3) (Supp.1996) (emphases added). However, this amendment did not occur until three years after the facts of the immediate case. Thus, we apply HRS § 431:10C–117 as codified in 1993.

12. We distinguish the "reasonable belief" determination set forth in HRS § 431:10C–117(a)(3)(C), which was added by the legislature in 1990, from the "reasonable belief" presumption discussed above. Over the years, this distinction has been blurred by the legislature and the courts. The reasonable belief determination, which is the guiding presumption used to interpret the statutory good faith *defense, see* HRS § 431:10C–117(a)(3)(C) at *supra* n. 11, has merged with the state-of-mind presumption, though both are separate determinations. For example, both *State v. Arakaki* and *State v. Palpallatoc* addressed the state-of-mind determination for the statutory good faith *defense,* not the

presumption for the state-of-mind element. In so doing, both cases incorporated the reasoning of *State v. Lesher,* which, while discussing the good faith defense, also discussed state of mind as a prima facie element of a no-fault insurance offense. *See Lesher,* 66 Haw. at 535–37, 669 P.2d at 147–48. The reasoning that the courts in *Arakaki* and *Palpallatoc* used to justify the state-of-mind determination for the good faith defense was thus that which evolved from *Lesher's* discussion of state of mind as an element. *See Arakaki,* 7 Haw.App. at 51, 54–55, 744 P.2d at 785, 787; *Palpallatoc,* 71 Haw. at 180, 182, 787 P.2d at 215–16. The dialogue regarding the necessary state-of-mind element for a no-fault insurance violation has thus been carried on in those cases discussing the proper determination for the good faith defense; however, both presumptions are applied separately. Our holding today is directed toward the underlying presumption for the state-of-mind element, not for the good faith defense.

Our opinion is thus consistent with *State v. Bolosan.* As the court stated in *Bolosan,* 78 Hawai'i at 91 n. 9, 890 P.2d at 678 n. 9, the legislature intended for HRS § 431:10C–117(a)(3)(C), regarding "reasonable belief," to be "a standard for determining how the good faith defense of lack of knowledge applies in the case of borrowed vehicles." We therefore note that the reasonable belief determination created in § 431:10C–117(a)(3)(C) applies to a defense and does not create a prima facie element of the case; the state-of-mind element existed prior to the 1990 amendment that created HRS § 431:10C–117(a)(3)(C). However, in clarifying its legislative intent (i.e., superseding by statute *Palpallatoc*), the legislature also clarified what the underlying presumption for the state of mind of the borrower of a motor vehicle is supposed to be: a reasonable belief of insurance. The reasonable belief determination created by the 1990 legislature thus (1) created the "reasonable belief" determination set forth in § 431:10C–117(a)(3)(C), which applies to the good faith defense, and (2) clarified that the underlying state of mind for a no-fault insurance violation, in the case of a borrowed vehicle, should be a "reasonable belief" that the vehicle is insured. The theoretical effect of this amendment is thus to create both a reasonable belief determination, which applies to the good faith defense, and a reasonable belief presumption, which applies to the state-of-mind element. The practical effect, as evidenced by our holding today, is to move the prosecutor's burden of proof in regards to the defendant's state of mind from disproving a defendant's good faith defense to proving the defendant's state of mind, as the legislature, apparently, originally intended.

car creates a presumption that the person held a *reasonable belief that the car was insured*. *Bolosan*, 78 Hawai'i at 90–91, 890 P.2d at 677–78; [13] *State v. Kahaunaele*, 10 Haw.App. 519, 531, 879 P.2d 566, 571 (1994).

As a Senate Standing Committee report stated,

> [W]e find it is reasonable for a driver who borrows a car to *assume that the borrowed vehicle is insured. The reasonableness of this assumption derives from the mandatory provisions of our automobile insurance law.* The assumption is, however, rebuttable by proof of knowledge of the uninsured status of the vehicle.

Sen. Stand. Comm. Rep. No. 2164, in 1990 Senate Journal, at 929 (emphasis added). This presumption of reasonable belief thus created a duty for the State to rebut the presumption with "proof of knowledge" that the driver *actually knew* of the "uninsured status of the vehicle." *Bolosan*, 78 Hawai'i at 90–91, 890 P.2d at 677–78. Further, because of this amendment, "the borrower of a motor vehicle has a *statutory right* to reasonably believe that the borrowed motor vehicle is insured." *Kahaunaele*, 10 Haw.App. at 531, 879 P.2d at 571 (emphasis added); *see also* Sen. Stand. Comm. Rep. No. 2616, in 1990 Senate Journal, at 1091 ("a person has a right to reasonably believe that a borrowed vehicle is insured, as all vehicles are required to carry coverage by law").

Thus, while it may not be apparent from a facial reading of HRS § 431:10C–104 or case precedent, the third element has survived the 1990 statutory amendment and subsequent creation of a new state-of-mind presumption. The elements and defenses have not changed, though the presumption, and concomitant burden on the State, have.

■ The State, therefore, has the burden of proving: (1) actual knowledge of no insurance; or (2) a "reckless" lack of knowledge when facts are in evidence showing that the defendant should have " 'affirmatively ascertain[ed]' " that the vehicle was insured. *Bolosan*, 78 Hawai'i at 91, 890 P.2d at 678 (quoting Conf. Comm. Rep. No. 113, in 1990 Senate Journal, at 813–14). This may occur, for example, where the borrower of a motor vehicle has reason to know that the vehicle is uninsured. In that case, the borrower of the vehicle would act with a "reckless" state of mind if he or she did not inquire into the vehicle's insurance status before he or she borrowed the motor vehicle.

■ However, so long as the borrower of the vehicle holds a "reasonable belief" that the vehicle is insured, he or she has no further duty to inquire into the status of the vehicle's insurance. In order to rebut the presumption of reasonable belief of insurance, this "reckless" state of mind, like the actual knowledge requirement, must be proved by the State.

The general rule is, therefore, that the State must prove beyond a reasonable doubt that the borrower of a motor vehicle knew that the vehicle was uninsured before he or she may be convicted of violating HRS § 431:10C–104, and be subjected to the penalty provisions of HRS § 431:10C–117.

■ In summary, the three elements that the State must prove beyond a reasonable doubt, in order to convict a driver *who is not the owner* of the vehicle, are, pursuant to HRS § 431:10C–104(a): (1) the vehicle was being driven on a "public street, road or highway of this State"; (2) the vehicle was not insured by no-fault insurance or some form of bond, surety or self-insurance; and (3) pursuant to HRS § 702–204, relevant case law and legislative history, the driver acted with the requisite state of mind. So long as the driver of the vehicle is not the vehicle's registered owner, he or she must have actually known that the vehicle was not insured by no-fault insurance, or, under cer-

---

13. In *Bolosan*, the defendant was arrested in 1989, requiring the court to apply HRS § 431:10C–117 as it existed before the legislature amended it in 1990 (creating the "reasonable belief" presumption). *Bolosan*, 78 Hawai'i at 90, 890 P.2d at 677. In the instant case, we apply HRS § 431:10C–117 as codified in 1993. However, *Bolosan's* holding and reasoning are still applicable because the court interpreted § 431:10C–117 *in light of* the legislature's 1990 amendments, "to determine the original legislative intent." *Id.* at 90, 890 P.2d at 677. *Bolosan* is, therefore, relevant to our discussion, because its interpretation and reasoning are based on current, post–1988 legislative amendments.

tain circumstances, be shown to have acted recklessly in not so knowing.

2. *The district court committed plain error by convicting Defendant without substantial evidence of her state of mind.*

■ In the instant case, the district court committed plain error by convicting Defendant of Operating a Vehicle Without No-Fault Insurance because the State did not, at any place in the record, inquire into and prove beyond a reasonable doubt the third state-of-mind element of the offense. Because "the borrower of a motor vehicle has a *statutory right* to reasonably believe that the borrowed motor vehicle is insured," *Kahaunaele*, 10 Haw.App. at 531, 879 P.2d at 571 (emphasis added), the court's error denied Defendant a statutory right. The denial of a statutory right can be considered a "substantial right" in this jurisdiction. *State v. Timas*, 82 Hawai'i 499, 509, 923 P.2d 916, 926, *cert. denied*, 81 Hawai'i 400, 917 P.2d 727 (1996). Further, the error seriously affects the "fairness, integrity or public reputation" of the district court's proceedings. The district court thus committed plain error, pursuant to HRPP Rule 52(b). We therefore reverse the district court's conviction of Defendant.

B. *The District Court Erred by Not Following the Procedural Mandates Set Forth in HRS § 805–13.*

Having concluded that Defendant was erroneously convicted, we now turn to the sole point of error raised by Defendant. We address this error, even though it is now a moot question, in order to guide the prosecutor's office, enforcement officers, and the district court in handling future cases.

Defendant argues that the district court's failure to require the owner of the vehicle to appear in court is, pursuant to HRS § 805–13(b), reversible error. A threshold inquiry is whether HRS § 805–13 is applicable to a violation of HRS § 431:10C–104. We agree with Defendant that HRS § 805–13 does apply to chapter 431:10C violations and that the district court erred in not requiring the vehicle's owner to appear in court; also, Officer Hankins erred by not properly citing the vehicle's registered owner. We therefore strongly encourage the prosecutor's office, enforcement officers, and the district court to strictly comply with HRS § 805–13.

1. *HRS § 805–13 is a valid procedural statute to apply to a § 431:10C–104 violation.*

■ As a preliminary matter, Defendant argues that HRS § 805–13 is a valid procedural statute because it has not been explicitly or implicitly repealed. Though Defendant presents the issue as one of repeal, the issue argued, in part, before the district court and the issue at hand is whether the procedural requirements of HRS § 805–13 are applicable to a chapter 431:10C violation. We conclude that they are.

At district court, the State argued that HRS § 805–13 does not apply because the statute expressly applies to violations of only "chapter 294 or section 286–116." [14] HRS § 805–13(b). The State points out that chapter 294 was repealed, 1987 Haw. Sess. L. Act

---

14. HRS § 286–116 provides, in pertinent part:

(b) At any time a law enforcement officer finds a motor vehicle in operation by a driver not in possession of the no-fault or liability insurance identification card required under section 431:10C–107 and section 431:10G–106, the officer shall issue a citation with the earliest possible date for court appearance in every instance.

(c) In all instances in which a citation shall be issued under subsection (b), *whenever the driver cited is not found to be the registered owner of the motor vehicle under operation, the citation shall also be issued to the driver as the owner's agent and to the registered owner of the motor vehicle.* Whenever the registered owner of any motor vehicle permits any person to operate the registered owner's motor vehicle, the registered owner appoints, designates, and constitutes the driver the registered owner's agent for all purposes under this section and section 431:10C–107, section 431:10G–106, and section 805–13.

(d) The operation of any motor vehicle required to be licensed on a highway by a driver, whether or not licensed, *who knows, or has reason to believe, that the motor vehicle is not insured in compliance with article 10C and article 10G of chapter 431, shall constitute a violation of this chapter.*

HRS § 286–116(b), (c), (d) (1993) (emphases added).

341 (vol.2), § 1 at 1, and Defendant was charged with violating § 431:10C–104. Therefore, the State argued that HRS § 805–13 was an improper procedural statute to apply in this case. For the reasons set forth below, we disagree.

First, although chapter 294 was repealed on July 1, 1988, it was recodified in chapter 431, the Hawai'i Insurance Code, effective the same date. *Id.* In addition to chapter 294, the following HRS chapters, all relating to the subject of insurance, were repealed by Act 347: Chapters 431, 431A, 431D, 431F, 431H, 431J, 432, 433, 434, and 435. *Id.*, § 1 at 1. According to HRS § 431:1–100.5 (1993), as adopted by Act 347, the purpose of the new chapter 431 was "to recodify, without *substantive change*, the insurance law in effect immediately prior to [the effective date of this chapter]." (Emphasis added.)

The House and Senate Conference Committee Reports on House Bill No. 410, which was enacted into law as Act 347, further explain the purpose of Act 347, as follows:

> The purpose of this bill is to update and revise Hawaii's [Hawai'i's] insurance laws. In 1985, the Legislature provided funds to the Insurance Commissioner for a comprehensive review of the State's insurance laws. The Legislature was concerned with the problems of insurance, such as its high cost, lack of availability, and affordability for certain risks. Furthermore, several insurance companies, national and domestic, had failed in the recent past.
>
> The report, "A Revised and Consolidated Insurance Laws [sic] of the State of Hawaii [Hawai'i]" was submitted to the 1987 Session and provided the basis for the bill.
>
> H.B. No. 410 was introduced as a complete revision of the insurance laws of the State. Existing chapters 296, and 431 and 435 were compressed into new Chapters 431 and 432. The existing chapters were grouped into twenty distinct articles, and further subdivided into parts.
>
> H.B. No. 410 differs from the report in a number of areas. This was due to the Insurance Commissioner's decision to remove provisions where changes of significance were proposed. Those changes were either placed in two companion bills, H.B. No. 1526 and S.B. No. 1525, and H.B. No. 1524 and S.B. No. 361, or removed entirely from consideration. It was intended that these companion measures would receive appropriate public hearings during which ample opportunity could be provided for discussion and debate.
>
> *On the other hand, H.B. No. 410 was designed to invite relatively little debate, its length and noncontroversial nature was intended to result in few changes.*
> . . .

Hse. Conf. Comm. Rep. No. 53, in 1987 House Journal, at 1022–23; Sen. Conf. Comm. Rep. No. 58, in 1987 Senate Journal, at 839–40 (emphasis added).

Based on the foregoing, it is clear that Act 347 was intended by the legislature to be purely non-substantive in nature, and to merely sweep all of the existing chapters on insurance into one, unified chapter on insurance.

Second, HRS § 805–13(b) was enacted as part of a comprehensive statutory scheme to strengthen the enforcement power of the compulsory insurance requirements of Hawai'i's no-fault law in protecting the public from uninsured motorists. HRS § 805–13(b) was originally enacted in 1978, when the state legislature passed and the Governor approved Act 91. Section 1 of Act 91 provided:

> **Legislature policy and purpose.** The legislature finds that the Hawaii [Hawai'i] no-fault law cannot function in the interest of the protection of our society if compliance with the law is permitted to be the option [sic] of some drivers and owners of motor vehicles.
>
> The legislature determines, that in order to protect the public as intended under Hawaii [Hawai'i] no-fault law, law enforcement officers and the courts of the State must be placed in a statutory position effectively to enforce the observance of the law.

1978 Haw. Sess. L. Act 91, § 3 at 116. The legislative committee reports on House Bill No. 2895, which was ultimately enacted as Act 91, confirm that the bill "provides the

---

necessary teeth to the no-fault law enforcement provisions, and will reduce the uninsured motorist population." Sen. Stand. Comm. Rep. No. 671, in 1978 Senate Journal, at 1060; Hse. Stand. Comm. Rep. No. 544, in 1978 House Journal, at 1634.

In keeping with the legislature's stated intention that the uninsured motorist population be reduced, HRS § 805–13(b) provides that a driver cited for not having the required no-fault insurance policy "shall be deemed to be the [vehicle] owner's agent for purposes of service and by naming the [vehicle's] owner jointly with the driver in the citation." As noted above, there is a statutory presumption that the driver of an uninsured vehicle holds a reasonable belief that the vehicle was insured. It would obviously be difficult to establish that a driver held an unreasonable belief that a vehicle was insured without the presence of the vehicle's owner. Moreover, the legislature's intent in enacting HRS § 805–13 was to enhance the enforcement of the no-fault law enforcement provisions and thereby reduce the uninsured motorist population. In order to accomplish this goal, the legislature believed that it was necessary to cite the key person responsible for the lack of no-fault insurance coverage for the vehicle: the vehicle's owner.

In construing HRS § 805–13, the legislature's intent controls. *State v. Ganal,* 81 Hawai'i 358, 371, 917 P.2d 370, 383 (1996). The legislature intended for § 805–13 "to place law enforcement officers and the courts of the State in an effective statutory position to enforce the compulsory insurance requirements of the Hawaii [Hawai'i] No–Fault Law in order to protect the public as intended under the law." Sen. Stand. Comm. Rep. No. 671, in 1978 Senate Journal, at 1059. Hawai'i's "No–Fault Law" is currently chapter 431, which is a non-substantive recodification of chapter 294, the former no-fault law which HRS chapter 431 replaced. *See* Hse. Stand. Comm. Rep. No. 173, in 1987 House Journal, at 1163.

It is a cardinal rule of statutory construction that courts are bound to give effect to all parts of a statute, and that *no clause, sentence, or word shall be construed as superfluous, void, or insignificant* if a construction can be legitimately found which will give force to and preserve all words of the statute.

*State v. Ortiz,* 74 Haw. 343, 351–52, 845 P.2d 547, 551–52, *reconsideration denied,* 74 Haw. 650, 849 P.2d 81 (1993) (emphasis added) (citing *State v. Wallace,* 71 Haw. 591, 594, 801 P.2d 27, 29 (1990)). In light of the legislature's intent to update and replace chapter 294 with chapter 431, and in keeping with § 805–13's original intent, we must conclude that HRS § 805–13 continues to apply to the relevant chapter regarding Hawai'i's insurance code, which is now chapter 431.

We therefore conclude that when a defendant is charged with a chapter 431:10C violation, in particular a violation of HRS § 431:10C–104, § 805–13 is the proper procedural statute for the district court, enforcement officers, and the prosecutor's office to follow.

2. *The district court erred by not strictly applying HRS § 805–13.*

Because HRS § 805–13 applies to chapter 431:10C violations, the district court and the prosecutor's office must follow the procedures set forth therein. The district court thus erred by not strictly construing and applying the procedures stated in § 805–13.

■ Criminal procedure statutes must be strictly construed. *State v. Ganal,* 81 Hawai'i at 373, 917 P.2d at 385; *State v. Gaylord,* 78 Hawai'i 127, 137, 890 P.2d 1167, 1177 (1995). Section 805–13(b) states that "[i]n all cases of citation for alleged violations of chapter 294 or section 286–116 the court *shall* require the appearance of the driver cited *and* the registered owner of the motor vehicle." (Emphases added.) Reading the face of the statute, § 805–13 *requires* the court to request the owner's presence as well as the driver's.

■ This interpretation is supported by the legislative scheme for no-fault insurance violations. *See State v. Toyomura,* 80 Hawai'i 8, 18–19, 904 P.2d 893, 904–05 (1995) (" 'we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose' "). HRS § 431:10C–117 provides that both the

driver and the registered owner, if they were properly convicted of violating HRS § 431:10C–104, must be penalized. HRS § 431:10C–117(a)(3). As the section on penalties for HRS § 431:10C–104 violations states,

> if any person operates a motor vehicle without a valid no-fault policy in effect insuring the driver or registered owner, or both, *either* the driver's license of the driver *and* of the registered owner shall be suspended for three months *or* they shall be required to maintain proof of financial responsibility pursuant to section 287–21(2), (3), or (4) and keep a nonrefundable no-fault insurance policy in force for six months....

HRS § 431:10C–117(a)(3) (1993) (emphases added); *see also* Sen. Conf. Comm. Rep. No. 188, in 1988 Senate Journal, at 658 ("in addition to a fine, *the owner and the driver* of an illegally operated uninsured motor vehicle *shall have* their driver's licenses suspended ...." (emphases added)); HRS § 286–116(c) (1993) (both the owner and the driver shall be cited for not carrying no-fault insurance). HRS § 431:10C–117, as codified in 1993,[15] clearly illustrates the legislature's intent to penalize both the driver and the owner of the vehicle, and § 805–13 provides the proper procedure to carry out this intent. However, though the district court fined Defendant and revoked her license for three months, at no time did the court require the registered owner's presence or even allude to the mandatory provision for also penalizing the owner. This constituted a prima facie procedural error.

**3. *The enforcement officer erred by not properly citing the vehicle's registered owner.***

■ Furthermore, the prosecutor concedes that Officer Hankins did not properly cite the vehicle's registered owner. As guidance to Hawaiʻi's enforcement officers, we hold that HRS § 805–13(b) requires that enforcement officers cite the registered owner as well as the driver of the motor vehicle. As HRS § 805–13(b) explicitly provides, "the registered owner shall be cited by service of the citation on the driver who shall be deemed to be the owner's agent for purposes of service *and by naming the owner jointly with the driver in the citation.*" (emphasis added); *see also* HRS § 286–116(c) (providing similar procedural guidelines).

On appeal, the State argues that though HRS § 805–13 requires a citation to be issued to both the driver and the owner, this provision should not be enforced because it is impracticable for enforcement officers to properly cite the registered owner of the vehicle if he or she is not in the vehicle at the time of the citation. This argument has merit because it may, sometimes, be difficult for an officer to properly give notice of the citation to the owner, particularly when the legislature has not set forth clear guidelines regarding the citations procedure.[16] However, the above provision of § 805–13(b) is clearly mandatory. Until the legislature sees fit to clarify or change the citations process, enforcement officers are legally bound to comply with HRS § 805–13(b) and, thus, must include the owner's name on any cita-

15. *See supra* n. 11, discussing amendments made in 1996 to HRS § 431:10C–117 (1993). These amendments eliminated the need for both the driver and the owner of the motor vehicle to suffer certain penalties, if the insurance violation was a first offense within a five-year period. HRS § 431:10C–117(a)(3) (Supp.1996). The legislature's intent in so amending the statute was, apparently, not to thwart the mandates of HRS § 805–13, but "to eliminate the proof of financial responsibility requirement for people convicted of driving without a valid no-fault policy for the first time within a five-year period." Hse. Stand. Comm. Rep. No. 791, in 1996 House Journal, at 1338.

16. While HRS § 805–13 appears to be unique, a couple of jurisdictions have addressed the prob-lem of citing the owner of a motor vehicle when the owner is not the operator of the vehicle. For example, in Minnesota, state statute provides (1) the manner in which the owner may be cited (by mail), (2) the address to which it should be mailed, and (3) that notice by mail is presumed received five days after mailing. Minn.Stat. Ann. § 169.791(4) (Supp.1997, vol.12A); *see also* Mo. Ann. Stat. § 303.041 (Vernon 1994) (providing similar guidance). We note that Hawaiʻi's insurance code procedures, in particular HRS §§ 805–13(b) and 286–116(c), could include such details. However, until the legislature decides to make such amendments, enforcement officers must follow HRS § 805–13(b)'s mandates.

tion issued to a driver who is not the owner of the vehicle.

## IV. CONCLUSION

We hold that the district court committed plain error when it convicted Defendant of violating HRS § 431:10C–104 because the State failed to prove one of the three necessary elements of the offense. The State must prove each of the elements because, otherwise, a serious miscarriage of justice may occur: the wrong defendant may be convicted (the proper defendant being the vehicle's registered owner). We therefore reverse the district court's conviction of Defendant in regards to the HRS § 431:10C–104 violation. We further conclude that the district court erred when it failed to require the owner of the vehicle to appear in court, pursuant to HRS § 805–13. Section 805–13 properly applies to chapter 431:10C violations, in particular HRS § 431:10C–104.

Our holding is congruent with the legislature's intent to deter owners from operating motor vehicles on public roadways without insurance and to deter drivers who knowingly borrow and operate on public roadways an uninsured motor vehicle. The state-of-mind requirement protects innocent borrowers of motor vehicles, holding responsible only drivers who knew or should have known that the vehicle was uninsured, and owners who failed to properly insure their motor vehicles. Enforcing the requirement that the registered owner appear in court will also help the district court and the State to determine who the true violator of the statute is: the vehicle's registered owner or, additionally, the vehicle's driver. We therefore strongly encourage prosecutors, the district courts, and enforcement officers to follow the procedures set forth in HRS § 805–13(b).