## L. AHLO *vs.* HENRY SMITH *et al.*

### MANDAMUS.

HEARING, JANUARY 27, 1892.   DECISION, JANUARY 28, 1892.

JUDD, C.J., BICKERTON AND DOLE, JJ.   McCULLY, J., ABSENT.

The Constitution substitutes the race status of Hawaiian, American or European birth or descent as a condition for the voting privilege in place of the status of citizenship, which was a requirement under the previous Constitution.

A native of China, who was naturalized here, and acquired the right to vote under the previous Constitution, was deprived of that right by the promulgation of the present Constitution.

The petitioner prays for a writ of mandamus, to be addressed to Henry Smith, Samuel F. Graham and George N. Shaw, Inspectors of Elections of the 2d Precinct of the 4th District of

Honolulu, where the petitioner resides, directing them to cause his name to be entered on the list of voters for Representatives, which they had refused to do on the sole ground that he was of Chinese descent.

An alternative writ was issued, returnable January 27th, at which time the respondents made answer.

BRIEF OF PETITIONER'S COUNSEL, A. S. HARTWELL.

The sole question is, whether the petitioner's Chinese birth and descent preclude him from voting.

1. The Constitution of 1887 does not pretend to state all the rights and privileges of Hawaiian subjects, but, on the contrary, in its 79th Article expressly declares that all the laws then in force "shall continue and remain in full effect, until altered or repealed by the Legislature : such parts only excepted as are repugnant to this Constitution.  All laws heretofore enacted, or that may hereafter be enacted, which are contrary to this Constitution, shall be null and void."

This means that all the civil, political and legal rights of Hawaiian subjects are neither based on, nor do they originate with, the Constitution of 1887.  That Constitution leaves in full force all the statutory provisions, including the provisions secured by the Constitution of 1864, which are not "repugnant" or "contrary" to its provisions.

In the Constitution of 1887, the Sovereign renounced the absolute veto power, and the power of appointing Nobles and dismissing Cabinets, and limited the exercise of his public acts to those which his Cabinet should advise and consent to.  But no private rights of Hawaiian subjects were destroyed.  By the law always in force since this country had a Constitutional Government, no man's right can be taken from him, except by "due process of law."  I submit, that as the petitioner had the right to vote under the Constitution of 1864, that right cannot be taken from him by any subsequent statute or Constitution, and that it has not been taken from him.  His rights were clearly fixed by law: "Every foreigner, so naturalized, shall be entitled to all the rights, privileges and immunities of an Ha-

waiian subject." Section 433, Comp. Laws. This Act was amended in the Acts of 1887 and 1890, but not a word of the above quoted sentence is changed.

The Constitution of 1887, in requiring voters to be "of Hawaiian, American, or European birth or descent," does not refer to those who then had a constitutional, statutory, and vested right to vote. It is one thing to enlarge vested private rights, one thing to direct the manner in which they shall be exercised; it is another and different thing to deprive one altogether of such rights. That, I submit, ought not to be inferred or implied by the language used in the Constitution of 1887.

2. This Court held, in Kekaula's Case, that as a conviction in 1882 for felonious cattle branding did not, under the laws then in force, disqualify one from voting, the disqualification imposed by Article 73 of the Constitution of 1887, of one "who shall have been convicted of felonious cattle branding," did not disqualify Kekaula. The language of the Court in that case was explicit in its recognition of a right to vote existing under the Constitution of 1864, viz.:

"(1) The specified prescription in Article 73 of the Constitution of 1887, making a conviction for the felonious branding a disqualification from civil rights, cannot be applied to instances of this offence committed previously to the date of this Constitution, for it would be *ex post facto* legislation.

(2) If Kekaula now lies under disqualifications, it must be pursuant to the provisions of Article 73 of the Constitution of 1864."

There is nothing legally "repugnant" or "contrary" to the petitioner's right in the requirement of the Constitution of 1887 as to voters. With questions of policy this Court has nothing to do. It is not a question whether more Chinese shall be naturalized or not, but whether those who were naturalized voters until 1887 are not now voters.

OPINION OF THE COURT, BY DOLE, J.

The petitioner claims the right to vote on the ground that he had such right previous to the present Constitution, and that

there is nothing in this Constitution which destroys that right. The constitutional provision for the voting privilege limits it to residents of Hawaiian, American or European birth or descent. (Articles 59, 62). This is a radical change from the provision for voting in the Constitution of 1864, which limits the privilege to subjects (Article 62), and which was annulled by the promulgation of the present Constitution, which substituted the race requirement for the old condition of citizenship. (Preamble of the Constitution.) But Section 432 of the Civil Code provides that every naturalized foreigner shall be entitled to the rights, privileges and immunities of a Hawaiian subject. This antedates the present Constitution. But what are the rights of the Hawaiian subject as to voting? Are they not so merged into the new provisions that now he votes—not as a Hawaiian subject at all, but solely as a resident Hawaiian, American or European by birth or descent? If this may be answered in the affirmative, as we think it may, the 432d Section of the Civil Code stands untouched by the Constitution, and the petitioner, by virtue of his naturalization, is entitled to the rights, privileges and immunities of a Hawaiian subject, but voting is not one of them, unless the additional race condition exists.

A Constitution which abrogates the previous fundamental law necessarily repeals all existing statutes inconsistent with itself. It may even be said that it repeals all statute law existing at the time of its promulgation ; whence the necessity of re-enacting all such laws as are not repugnant to it. (Const. Art. 79). When such a Constitution takes effect, it is a new departure in the government of the country, inasmuch as it states anew the principles upon which the government is to be administered, and rearranges the distributions and limitations of sovereign powers. What is not changed is re-affirmed. The new statement of the fundamental law takes the place of the old.

Under this change of voting condition, from citizenship to race status, the plaintiff has lost his privilege, whether intentionally or not it does not concern this issue, though, upon general principles, it is to be regretted. The voting right is a privilege

rather than a right, and a duty rather than a privilege. Even if it is regarded as a right, the loss of it through the promulgation of a new Constitution is by "due process of law" of the most pronounced character.

The plaintiff's counsel refers in his brief to the Opinion of the Justices of the Supreme Court, in reply to questions addressed them by the Cabinet in regard to the voting qualifications of one Kekaula, who had been convicted of felonious branding of cattle in 1882, in support of his position in this case. It seems to us that that opinion is based upon different principles than are raised in this case. The circumstances were also different.

Kekaula had been convicted of an offense, under the old Constitution, which did not deprive him of his civil rights, as it would have done under the present Constitution, which found him in the enjoyment of these rights. The Justices consider that the provision of Article 73 of the Constitution, which deprives one who "shall have been convicted of" felonious branding of cattle of his civil rights, did not apply to Kekaula for two reasons, *i.e.*, because the language "shall have been convicted" denotes future convictions, and because the deprivation of civil rights by the present constitutional enactment for a previous offense, committed under laws which did not deprive the offender of civil rights, would distinctly characterize it as *ex post facto* legislation, and a construction involving such a result should not be adopted, even of a constitutional provision, unless the words distinctly require it, as they do not in that case. (See said Opinion, *post*, Appendix.)

We do not therefore see that that case is a precedent or a guide in any way to this.

We find that the petitioner is not entitled to vote, his previous right having been annulled by the Constitution, and therefore dismiss the complaint.

*A. S. Hartwell*, for the petitioner.

*Attorney-General Whiting*, for the respondents.