883 P.2d 641

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Anthony L. LORENZO, Defendant–
Appellant.**

**No. 16405.**

Intermediate Court of Appeals of Hawai'i.

Oct. 20, 1994.

Kali Watson, on the brief, Honolulu, for defendant-appellant.

James M. Anderson, Deputy Pros. Atty., City and County of Honolulu, on the brief, Honolulu, for plaintiff-appellee.

Before BURNS, C.J., and HEEN and WATANABE, JJ.

HEEN, Judge.

Upon his plea of *nolo contendere*, Defendant–Appellant Anthony Lorenzo (Lorenzo) was adjudged guilty of the offenses of failing to render assistance after being involved in an automobile accident, Hawai'i Revised Statutes (HRS) § 291C–12 (1985), driving without a license, HRS § 286–102 (1985), and negligent injury, HRS § 707–705 (Supp. 1992).

Lorenzo appeals, arguing that the lower court erred in denying his pretrial motion (Motion) to dismiss the indictment. The essence of the Motion is that the Kingdom of Hawai'i (Kingdom) was recognized as an independent sovereign nation by the United States in numerous bilateral treaties; the Kingdom was illegally overthrown in 1893 with the assistance of the United States; the Kingdom still exists as a sovereign nation; he is a citizen of the Kingdom; therefore, the courts of the State of Hawai'i have no jurisdiction over him.[1] Lorenzo makes the same argument on appeal. For the reasons set forth below, we conclude that the lower court correctly denied the Motion.

We start with the proposition that the court's jurisdiction to consider matters brought before it is a question of law, *United States v. Lorenzo*, 995 F.2d 1448, 1456 (9th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 225, 126 L.Ed.2d 180, which is subject to *de novo* review on appeal applying the "right/wrong" standard. *State v. Furutani*, 76 Hawai'i 172, 180, 873 P.2d 51, 59 (1994) (citing *In re Estate of Holt*, 75 Haw. 224, 232, 857 P.2d 1355, 1359, *reconsideration denied*, 75 Haw. ——, 863 P.2d 989 (1993)) (citation omitted).

The lower court in this case orally ruled:

[A]lthough the Court respects Defendant's freedom of thought and expression to believe that jurisdiction over the Defendant for the criminal offenses in the instant case should be with a sovereign, Native Hawaiian entity, like the Kingdom of Hawaii [Hawai'i], such an entity does not preempt nor preclude jurisdiction of this court over the above-entitled matter.

The essence of the lower court's decision is that even if, as Lorenzo contends, the 1893 overthrow of the Kingdom was illegal, that would not affect the court's jurisdiction in this case. Although the court's rationale is

---

1. Incongruously, although Defendant challenged the lower court's jurisdiction, he in fact requested the court to exercise jurisdiction by transfer-

open to question in light of international law,[2] the record indicates that the decision was correct because Lorenzo did not meet his burden of proving his defense of lack of jurisdiction. HRS § 701–115(2). Therefore, we must affirm the judgment. *State v. Schroeder*, 76 Hawai'i 517, 880 P.2d 192 (1994) (citing *Brooks v. Minn,* 73 Haw. 566, 576, 836 P.2d 1081, 1087 (1992)).

The United States Government recently recognized the illegality of the overthrow of the Kingdom and the role of the United States in that event. P.L. 103–150, 107 Stat. 1510 (1993). However, that recognition does not appear to be tantamount to a recognition that the Kingdom continues to exist.

The Hawai'i State Government has also recognized that as a result of the overthrow and the events that followed thereafter,

> the indigenous people of Hawaii [Hawai'i] were denied the mechanism for expression of their inherent sovereignty through self-government and self-determination, their lands, and their ocean resources.

Act 359, § 1, 1993 Haw.Sess.Laws 1009, 1010.

The stated purpose of Act 359 is to "facilitate the efforts of native Hawaiians to be governed by an indigenous sovereign nation of their own choosing." Thus, while the legislature has tacitly recognized the illegal overthrow, Act 359 indicates that the State of Hawai'i does not recognize that the Kingdom exists at the present time.

Act 359 recognized the Hawaiian sovereignty movement and established the Hawaiian Sovereignty Advisory Commission to assist the legislature in obtaining "counsel from the native Hawaiian people on the process" of determining their willingness to convene in a convention and draft a document to provide for their self-governance through a sovereign entity.[3] Only theoretically would such an entity be an extension of the original Kingdom; rather, it would be a new sovereign entity established by a present day Native Hawaiian citizenry.

We also take judicial notice that within the Native Hawaiian community there is more than one group that has disavowed Act 359's process and has declared itself to be either independent of the State and the United States or has established its own constitution establishing a Native Hawaiian "Nation within a Nation." At least one of those groups bases its declaration of independence on P.L. 103–150. Some of those groups have actively sought recognition internationally and from the United States government as a reorganized sovereign Hawaiian nation. However, none has been successful so far.

Although it may be argued, as do many Native Hawaiians, that the actions and the declarations of the United States and the State are not determinative of the question of the continued existence of the Kingdom, those actions, and the actions of the various Native Hawaiian groups referred to above, illustrate that there is no clear consensus that the Kingdom does continue to exist. Consequently, it was incumbent on Defendant to present evidence supporting his claim. *United States v. Lorenzo.* Lorenzo has presented no factual (or legal) basis for concluding that the Kingdom exists as a state in accordance with recognized attributes of a state's sovereign nature.[4] Consequently, his

ring the case to the "Court of the Supreme Court of Judicature under the Hawai'i Nationals."

**2.** A state has an obligation not to recognize or treat as a state an entity that has attained the qualifications for statehood as a result of a threat or use of armed force in violation of the United Nations Charter.

*Restatement (Third) of the Foreign Relations Law of the United States § 202(2).*

The illegal overthrow leaves open the question whether the present governance system should be recognized, even though the illegal overthrow pre-dated the United Nations Charter.

**3.** In 1994, the legislature changed the name of the Hawaiian Sovereignty Advisory Commission to the Hawaiian Sovereignty Election Council and gave the Council general supervision over elections to a convention of Native Hawaiians to prepare a system of self-governance for themselves. Act 200, 1994 Haw.Sess.Laws.

**4.** A state is defined as

> "an entity that has a defined territory and a permanent population, under the control of its own government, and that engages in, or has the capacity to engage in, formal relations with other such entities."

*Klinghoffer v. S.N.C. Achille Lauro,* 937 F.2d 44, 47 (2d Cir.1991) (quoting *National Petrochemical Co. v. M/T Stolt Sheaf,* 860 F.2d 551, 553 (2d

222

argument that he is subject solely to the Kingdom's jurisdiction is without merit, and the lower court correctly exercised jurisdiction over him. *Id.*

The judgment is affirmed.

Cir.1988) (quoting *Restatement (Third) of the Foreign Relations Law of the United States* § 201 (1987)), *cert. denied,* 489 U.S. 1081, 109 S.Ct. 1535, 103 L.Ed.2d 840 (1989)).

The United States Supreme Court has listed the following as essential attributes of sovereign statehood: the power to declare and wage war; to conclude peace; to maintain diplomatic ties with other sovereigns; to acquire territory by discovery and occupation; and to make international agreements and treaties. *See United States v. Curtiss–Wright Export Corp.,* 299 U.S. 304, 318–319, 57 S.Ct. 216, 220–21, 81 L.Ed. 255 (1936).