976 P.2d 444

STATE of Hawai'i, Plaintiff–Appellee,

v.

Kenneth S.G. LEE,

No. 21220.

Supreme Court of Hawai'i.

Feb. 8, 1999.

Reconsideration Denied
Feb. 24, 1999.

---

Kenneth S.G. Lee, on the briefs, for defendant-appellant, pro se.

Michael Udovic, Deputy Prosecuting Attorney, on the briefs, for the plaintiff-appellee State of Hawaiʻi.

MOON, C.J., KLEIN, LEVINSON, NAKAYAMA, and RAMIL, JJ.

Opinion of the Court by LEVINSON, J.

The defendant-appellant Kenneth S.G. Lee, acting pro se, appeals from his convic-

tion of and sentence for one count of operation without no-fault insurance, in violation of Hawai'i Revised Statues (HRS) § 431:10C–104 (1993 & Supp.1996).[1] On appeal, he argues that the district court erred because: (1) there was insufficient evidence adduced that (a) the vehicle was uninsured, (b) Lee was the owner of the vehicle, and (c) Lee possessed the requisite state of mind at the time of the alleged violation; (2) it failed to comply with the procedural requirements of HRS § 805–13(b) (1993);[2] and (3) HRS ch. 431 is unenforceable against Lee, inasmuch as it violates article III of the 1840 Constitution of the Kingdom of Hawai'i. Lee's arguments are without merit. Accordingly, we affirm the district court's judgment, conviction, and sentence.

## I. BACKGROUND

On November 10, 1997, Lee was tried for one count of operation without no-fault insurance, in violation of HRS § 431:10C–104, in the district court of the third circuit, Hilo division. At trial, the prosecution's evidence consisted entirely of the testimony of Hawai'i County Police Department Officer Christo-

pher Gali. Officer Gali identified Lee and testified that he had "stop[ped] a vehicle by a person who became known to [him] as Kenneth S. Lee" on August 4, 1997, in South Hilo. The remainder of Officer Gali's testimony was as follows:

Q. . . . [W]hen you stopped that person[,] did you ask him for identification?

A. Yes.

Q. And did he produce identification?

A. Yes, his driving license.

Q. And did you ask him for an insurance card?

A. Yes, I did.

Q. And was he able to produce the insurance card?

A. No.

Q. What was the circumstance of that conversation, if any?

A. Basically, I stopped him for registration and safety check being expired, at which time I asked him for his insurance card. He said he didn't have one. And then I proceeded to issue him citations.

Q. And that's the extent of your contact with him on that day?

1. As of August 4, 1997, the date of Lee's alleged violation of HRS § 431:10C–104, that statute provided:

**Conditions of operation and registration of motor vehicles.** (a) Except as provided in section 431:10C–105, no person shall operate or use a motor vehicle upon any public street, road, or highway of this State at any time unless such motor vehicle is insured at all times under a no-fault policy.

(b) Every owner of a motor vehicle used or operated at any time upon any public street, road, or highway of this State shall obtain a no-fault policy upon such vehicle which provides the coverage required by this article and shall maintain the no-fault policy at all times for the entire motor vehicle registration period.

(c) Any person who violates the provisions of this section shall be subject to the provisions of section 431:10C–117(a).

(d) The provisions of this article shall not apply to any vehicle owned by or registered in the name of any agency of the federal government, or to any antique motor vehicle as defined in section 249–1.

The section was amended, effective January 1, 1998, in respects immaterial to the present appeal. See 1997 Haw. Sess. L. Act 251, §§ 14 and 70 at 525, 553 (replacing the phrase "no-fault policy," as employed in subsections (a) and (b), with the phrase "motor vehicle policy").

2. At the time of Lee's alleged violation of HRS § 431:10C–104, HRS § 805–13(b) provided in relevant part that,

[i]n all cases of citation for alleged violations of chapter 294 or section 286–116, the court shall require the appearance of the driver cited and the registered owner of the motor vehicle. If the registered owner is not the driver, the registered owner shall be cited by service of the citation on the driver who shall be deemed to be the owner's agent for purposes of service and by naming the owner jointly with the driver in the citation. . . .

(Indentation omitted.) HRS § 805–13 was amended, effective January 1, 1998, to replace the references to "chapter 294" with "chapter 431:10C." See 1997 Haw. Sess. L. Act 251, §§ 56 and 70 at 550, 553. Although the legislative history is silent regarding the purpose for the change, the amendment appears merely to have codified an existing appellate interpretation that the section was meant to apply to chapter 294's successor, chapter 431:10C, following the repeal of the former chapter and enactment of the latter as a replacement. See State v. Shamp, 86 Hawai'i 331, 339–40, 949 P.2d 171, 179–81 (App. 1997).

**A. Yes.**

Lee proceeded pro se at trial. In his case-in-chief, Lee was sworn in as a witness, but, instead of proffering testimony regarding the events surrounding the alleged violation, he advanced legal argument regarding the "validity of the State no-fault law as now applied to native Hawaiians." Lee argued, *inter alia*, that HRS § 431:10C–104 was invalid pursuant to (1) the "Native Hawaiian Declaration of 1839," (2) article III of the 1840 Constitution of the Kingdom of Hawai'i, and (3) United States Public Law 103–150, 107 Stat. 1510 (1993) (Congress' Joint Resolution "apologiz[ing] to Native Hawaiians on behalf of the people of the United States for the overthrow of the Kingdom of Hawaii on January 17, 1893[.]").

The district court discussed Lee's arguments with him at length on the record, rejected them, and then found him guilty as charged. The district court sentenced Lee to seventy-five hours of community service, but stayed imposition of the sentence pending the filing of a notice of appeal. The district court's judgment was entered the same day.

On November 19, 1997, Lee filed a "Motion for Reconsideration or Motion for New Trial." In his "Declaration" in support of the motion, Lee essentially reiterated his trial arguments. On the line denominated paragraph five of his declaration, Lee stated: "I cannot transfer the ownership of my car until I have a current safety check. I don't want to buy no-fault insurance. Now[,] I have a no-fault ticket." On December 5, 1997, Lee filed an "Additional Declaration in Support Of Motion for Reconsideration or Motion for New Trial." The "additional declaration" contained more citations relevant to his argument with respect to the Constitution of 1840, as well as the following "clarification":

I have to clarify paragraph 5 in my first Declaration. When I say transfer the ownership of my car[,] I mean to my name. I cannot buy no-fault insurance until the car is in my name. After the trial I did call AARP and they only insure if the car is already insured. I think this is oppressive. I also somehow forgot to mention how I got the ticket. After the officer stopped me, he called to check ownership and I heard the lady on the radio say "Hawaii Motors" and that is correct. The officer then gave me a ticket.

A hearing was held on Lee's motions on December 5, 1997. Lee reiterated his legal arguments and also asserted that the evidence had been insufficient to support his conviction. Lee's "clarification" of "paragraph 5" of his initial declaration unfolded as follows:

THE DEFENDANT: ... [T]he car is registered—is owned by Hawaiian Motors, and I believe it's that officer's duty to prove that it doesn't have insurance.

THE COURT: .... If the registered owner of the vehicle was somebody else, in light since [sic] ... your case came up

[THE PROSECUTION:] —[T]here's a subsequent—

THE COURT:—there has been a decision by the, uh—

[THE PROSECUTION:] —ICA—

THE COURT:—Intermediate Court of Appeals, appellate court. You've got two appellate courts: Supreme Court and Intermediate Court of Appeals that says [sic] that if you have a vehicle that is being driven by somebody that is owned by somebody else, that ... you're actually supposed to cite both—both of you. You're supposed to cite the owner and the guy who was driving it and maybe—it's kind of a long story—but maybe the person who is driving it should not be ticketed or should be found not guilty on a good faith defense. But not the—registered owner in the sense of ... like if you buy your vehicle and the registered owner is the bank because you still owe money on the car, I'm pretty sure that that's not what they're talking about.

[THE PROSECUTION:] Or failure to transfer.

THE COURT: Now, if you ... were to come in and say I can prove that the registered owner of the vehicle was your friend over there, then maybe he's supposed to pay the ticket, not you. In light of that decision, then maybe you would have something. But not where the other owner is ... the lending institution.

The district court orally denied Lee's motions at the conclusion of the hearing, indicating that it "[did]n't plan to write a written decision."

Lee's timely appeal of the district court's judgment was filed on December 9, 1997.

## II. STANDARDS OF REVIEW

### A. Sufficiency Of The Evidence

"[Judgments] based on conflicting evidence will not be set aside where there is substantial evidence to support the [trier of fact's] findings." *Tsugawa v. Reinartz*, 56 Haw. 67, 71, 527 P.2d 1278, 1282 (1974). We have defined "substantial evidence" as "credible evidence which is of sufficient quality and probative value to enable a [person] of reasonable caution to support a conclusion." *See, e.g., In re Doe, Born on January 5, 1976*, 76 Hawai'i 85, 93, 869 P.2d 1304, 1312 (1994) (citations omitted) (brackets in original).

*Aga v. Hundahl*, 78 Hawai'i 230, 237, 891 P.2d 1022, 1029 (1995). "[I]t is well-settled that an appellate court will not pass upon issues dependent upon the credibility of witnesses and the weight of the evidence; this is the province of the [trier of fact]." *State v. Buch*, 83 Hawai'i 308, 321, 926 P.2d 599, 612 (1996) (citation omitted). "We have long held that evidence adduced in the trial court must be considered in the strongest light for the prosecution when the appellate court passes on the legal sufficiency of such evidence to support a conviction." *State v. Batson*, 73 Haw. 236, 248, 831 P.2d 924, 931 (1992), *reconsideration denied*, 73 Haw. 625, 834 P.2d 1315 (1992) (citations omitted).

*State v. Bautista*, 86 Hawai'i 207, 210, 948 P.2d 1048, 1051 (1997) (some brackets in original and some added).

### B. Plain Error

"We may recognize plain error when the error committed affects substantial rights of the defendant." *State v. Cullen*, 86 Hawai'i 1, 8, 946 P.2d 955, 962 (1997) (citations and internal quotation signals omitted). *See also* Hawai'i Rules of Penal Procedure (HRPP) Rule 52(b) (1993) ("Plain error or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.").

*State v. Davia*, 87 Hawai'i 249, 253, 953 P.2d 1347, 1351 (1998).

### C. Motion For A New Trial

" 'As a general matter, the granting or denial of a motion for a new trial is within the sound discretion of the trial court and will not be disturbed absent a clear abuse of discretion.' " *State v. Samonte*, 83 Hawai'i 507, 527, 928 P.2d 1, 21 (1996) (quoting *State v. Furutani*, 76 Hawai'i 172, 178–79, 873 P.2d 51, 57–58 (1994) (citations omitted)). "An abuse of discretion occurs if the trial court has clearly exceeded the bounds of reason or has disregarded rules or principles of law or practice to the substantial detriment of a party litigant." *Roxas v. Marcos*, 89 Hawai'i 91, 115, 969 P.2d 1209, 1233 (1998) (quoting *Davia*, 87 Hawai'i at 253, 953 P.2d at 1351 (citations and internal quotation signals omitted)).

### D. Conclusions Of Law

We review the trial court's [conclusions of law] *de novo* under the right/wrong standard. *Raines v. State*, 79 Hawai'i 219, 222, 900 P.2d 1286, 1289 (1995). "Under this ... standard, we examine the facts and answer the question without being required to give any weight to the trial court's answer to it." *State v. Miller*, 4 Haw.App. 603, 606, 671 P.2d 1037, 1040 (1983). *See also Amfac, Inc. v. Waikiki Beachcomber Inv. Co.*, 74 Haw. 85, 119, 839 P.2d 10, 28, *reconsideration denied*, 74 Haw. 650, 843 P.2d 144 (1992). Thus, a [conclusion of law] "is not binding upon the appellate court and is freely reviewable for its correctness." *State v. Bowe*, 77 Hawai'i 51, 53, 881 P.2d 538, 540 (1994) (citation omitted).

*Roxas*, 89 Hawai'i at 115, 969 P.2d at 1233 (quoting *State v. Kane*, 87 Hawai'i 71, 74, 951 P.2d 934, 937 (1998) (quoting *Aickin v. Ocean View Inv. Co.*, 84 Hawai'i 447, 453, 935 P.2d 992, 998 (1997)) (brackets in original)).

## III. *DISCUSSION*

### A. *The Evidence Was Sufficient To Support Lee's Conviction.*

#### 1. *The evidence was sufficient to establish that Lee and the vehicle were uninsured.*

■ Lee first argues that the district court erred in (1) convicting him of a violation of HRS § 431:10C–104, and (2) denying his motion for a new trial,[3] inasmuch as the prosecution failed to prove that the vehicle he drove was uninsured. However, as noted above, Officer Gali testified that Lee failed to produce an insurance card and admitted that he did not have one. Those facts, in and of themselves, were sufficient to establish that Lee and the vehicle were uninsured.

HRS § 431:10C–107 (1993) provides in relevant part that "[e]very insurer shall issue to its insureds a no-fault insurance identification card for each motor vehicle for which the basic no-fault coverage is written" and that the "identification card shall be in the insured motor vehicle at all times and shall be exhibited to a law enforcement officer upon demand." The legislative history underlying HRS § 431:10C–107 indicates that the statute was enacted for the purpose of simplifying the prosecution's task of proving noncompliance with HRS § 431:10C–104. *See* Sen. Stand. Comm. Rep. No. 584–78, in 1978 Senate Journal, at 1012 (noting that (1) "[t]he purpose of this bill is to place law enforcement officers and the courts of the State in an effective statutory position to enforce the compulsory insurance requirements of the Hawaii No–Fault Law in order to protect the public as intended by the law," (2) "prior law [did] not specifically authorize police officers to demand production of proof of insurance from a motorist and [did] not require a motorist to present proof upon demand," and (3) the proposed act would "provide[ ] the necessary teeth to the no-fault law enforcement provisions"); Sen. Stand. Comm. Rep. No. 671–78, in 1978 Senate Journal, at 1059 (same); Hse. Stand. Comm. Rep. No. 544–

78, in 1978 House Journal, at 1633 (noting that "[t]he purpose of this bill is to strengthen the enforcement provisions of the compulsory insurance requirements of the Hawaii No–Fault Law"). Thus, it appears that it was the legislature's intent that the trier of fact might infer from the inability to produce an insurance identification card that there was no no-fault insurance coverage of the vehicle or the driver. Inasmuch as the district court appears to have drawn such an inference in this case, we cannot say there was no substantial evidence to support the district court's implied finding of fact.

■ In support of his argument, Lee also quotes the following characterization of the elements of HRS § 431:10C–104 from the Intermediate Court of Appeals' (ICA) opinion in *State v. Shamp*, 86 Hawai'i 331, 949 P.2d 171 (App.1997):

> ... [T]he three elements that the State must prove beyond a reasonable doubt, in order to convict a driver *who is not the owner* of the vehicle,[4] are, pursuant to HRS § 431:10C–104(a): (1) the vehicle was being driven on a "public street road or highway of this State"; (2) **the vehicle was not insured by** no-fault insurance or **some form of bond, surety or self-insurance**; and (3) pursuant to HRS § 702–204, relevant case law and legislative history, the driver acted with the requisite state of mind.

(Emphasis in original indicated by underlined text and added emphasis indicated in bold face.) Although Lee does not clearly raise the issue, we note that the *Shamp* court's iteration of the elements of HRS § 431:10C–104(a) implies that the prosecution bears the burden of disproving that a vehicle or driver is self-insured. In the present case, the prosecution offered no evidence that the vehicle or Lee were not self-insured. If the *Shamp* construction is correct—*i.e.*, if the absence of self-insurance constitutes "conduct" or "attendant circumstance" "specified by the definition of the offense," pursuant to HRS § 702–205 (1993), rather than a "de-

---

3. We note that the Hawai'i Rules of Penal Procedure do not provide for a "motion for reconsideration" of a guilty verdict.

4. Lee's claim that he was not the owner of the vehicle he was driving is discussed *infra* section III.B.

fense," pursuant to HRS § 701–115 (1993)— then the prosecution's omission in this regard would rise to the level of plain error. *Cf. State v. Hirayasu,* 71 Haw. 587, 589–90, 801 P.2d 25, 26 (1990) (reversing a conviction for plain error due to insufficiency of the evidence); *Shamp,* 86 Hawai'i at 334, 949 P.2d at 174 (holding that the prosecution's failure to prove the defendant's state of mind constituted plain error). However, because we hold, contrary to the view implied in *Shamp,* that proof of self-insurance is a "defense," within the meaning of HRS § 701–115, we perceive no error.

HRS § 431:10C–104(a), which defines the offense of operation without no-fault insurance, indicates in relevant part that its requirements apply "[e]xcept as provided in section 431:10C–105." *See supra* note 1. At the time of Lee's alleged violation of HRS § 431:10C–104, HRS § 431:10C–105 (1993) provided:

> **Self-insurance.** The motor vehicle insurance required by section 431:10C–104 may be satisfied by any owner of a motor vehicle if:
>
> (1) Such owner provides a surety bond, proof of qualifications as a self insurer or other securities affording security substantially equivalent to that afforded under a no-fault policy, providing coverage at all time for the entire motor vehicle registration period, as determined and approved by the commissioner under regulations; and
>
> (2) The commissioner is satisfied that in case of injury, death or property damage, any claimant would have the same rights against such owner as the claimant would have had if a no-fault policy had been applicable to such vehicle.[5]

Accordingly, even assuming that Lee did not have a no-fault policy pursuant to HRS § 431:10C–104(a), if either he or the vehicle were self-insured, then he would not be guilty of the charge. The question, then, is whether Lee or the prosecution bore the burden of production on the issue.

HRS § 702–205 (1993) provides:

> **Elements of an offense.** The elements of an offense are such (1) conduct, (2) attendant circumstances, and (3) results of conduct, as:
>
> (a) Are specified by the definition of the offense, and
>
> (b) Negative a defense (other than a defense based on the statute of limitations, lack of venue, or lack of jurisdiction).

HRS § 701–114 (1993) provides in relevant part that, "[e]xcept as otherwise provided in section 701–115, no person may be convicted of an offense unless the following [is] proved beyond a reasonable doubt: . . . [e]ach element of the offense." HRS § 701–115 (1993) provides:

> **Defenses.** (1) *A defense is a fact or set of facts which negatives penal liability.*
>
> (2) *No defense may be considered by the trier of fact unless evidence of the specified facts has been presented.* If such evidence is presented, then:
>
> (a) If the defense is not an affirmative defense, the defendant is entitled to an acquittal if the trier of fact finds that the evidence, when considered in the light of any contrary prosecution evidence, raises a reasonable doubt as to the defendant's guilt; or
>
> (b) If the defense is an affirmative defense, the defendant is entitled to an acquittal if the trier of fact finds that the evidence, when considered in the light of any contrary prosecution evidence, proves by a preponderance of the evidence the specified fact or facts which negative penal liability.
>
> (3) A defense is an affirmative defense if:
>
> (a) It is specifically so designated by the Code or another statute; or
>
> (b) If the Code or another statute plainly requires the defendant to prove the

---

5. Since the time of Lee's alleged violation of HRS § 431:10C–104, HRS § 431:10C–105 has been amended once, in immaterial respects. *See* 1997 Haw. Sess. L. Act 251, §§ 16 and 70 at 526, 553 (replacing the phrase "no-fault policy," as set forth in subsections (1) and (2), with the phrase "motor vehicle insurance policy").

defense by a preponderance of the evidence.

(Emphases added.)

If self-insurance is "a fact or set of facts which negatives penal liability" (*i.e.*, a "defense"), rather than "conduct," "attendant circumstances," or "results of conduct" "specified by the definition of the offense," *see* HRS § 702–205, *supra*, then the prosecution need not disprove self-insurance if no evidence of it is offered by either side. In other words, if self-insurance is a defense, the defendant bears the initial burden of production on the issue. *Cf. State v. Bolosan*, 78 Hawai'i 86, 89, 890 P.2d 673, 676 (1995) (holding that lack of knowledge that a borrowed car is uninsured is a "defense" to HRS § 431:10C–104 and need not be disproved if the evidence does not raise it).

As noted above, *Shamp* contains language suggesting that self-insurance is "conduct," "attendant circumstances," or "results of conduct," rather than a defense, for purposes of HRS § 431:10C–104. However, the decision is devoid of any explanation of its suggestion in that regard. Although the appellate courts of this state have never directly addressed the question elsewhere, several decisions have hinted at a position conflicting with *Shamp*. In *State v. Kahaunaele*, 10 Haw.App. 519, 879 P.2d 566 (1994), *overruled on other grounds by Bolosan*, 78 Hawai'i at 91 n. 9, 890 P.2d at 678 n. 9, the Intermediate Court of Appeals (ICA) addressed seven consolidated appeals of defendants convicted of violations of HRS § 431:10C–104, all of whom had borrowed vehicles that were not properly insured. It appears from the facts cited by the *Kahaunaele* court that no evidence of self-insurance had been raised in any of the consolidated cases. *See Kahaunaele*, 10 Haw.App. at 521–22, 879 P.2d at 567–68. In its discussion, the *Kahaunaele* court quoted HRS § 431:10C–104(a), but omitted the initial phrase "[e]xcept as provided in section 431:10C–105," *id.* at 524, 879 P.2d at 568, and, accordingly, did not address the self-insurance exception. Similarly, in *Bolosan*, a case in which the defendant had borrowed a vehicle that was, apparently, uninsured, 78 Hawai'i at 87, 890 P.2d at 674, this court's factual recitation made no mention of evidence regarding self-insurance, and we therefore did not address the issue. Inasmuch as no evidence of self-insurance was adduced at trial in either case, the *Bolosan* and *Kahaunaele* courts appear to have assumed that self-insurance is a defense to, rather than an "element" of, the offense of operation without no-fault insurance.

In *State v. Nobriga*, 10 Haw.App. 353, 873 P.2d 110 (1994), *overruled on other grounds by State v. Maelega*, 80 Hawai'i 172, 178–79, 907 P.2d 758, 764–65 (1995),[6] the ICA set forth a framework for determining whether an "exception" is a "defense" to or an "element" of an offense:

> The general and well-settled common law rule is that where an exception is embodied in the language of the enacting clause of a criminal statute,[7] and therefore appears to be an integral part of the verbal description of the offense, the burden is on the prosecution to negative that exception, prima facie, as part of its main case. Annotation, *Burden of Averment and Proof As to Exception in Criminal Statute on Which the Prosecution Is Based*, 153 A.L.R. 1218, 1226 (1944); 1 *Wharton's*

---

6. In *Maelega*, this court took issue with characterization in *Nobriga* of the defendant's burden, pursuant to HRS § 701–115, "to come forward with some *credible evidence* of facts constituting the defense" and explained, instead, that the defendant's burden was merely to come forward with *some* evidence, "*no matter how weak, inconclusive, or unsatisfactory the evidence may be.*" *Maelega*, 80 Hawai'i at 176, 179, 907 P.2d at 762, 765 (quoting *Nobriga*, 10 Haw.App. at 359, 873 P.2d at 113 (citing Commentary to HRS § 701–115 (1985)) (emphasis in original), and *State v. Pinero*, 75 Haw. 282, 304, 859 P.2d 1369, 1379 (1993) (citations and internal quotation marks omitted)) (emphasis in original).

7. In criminal nomenclature, the term "enacting clause" has long been applied to the prohibitory declaration of the statute which contains the general or preliminary description of the acts prohibited; i.e., the clause which proscribes the offensive deed. Annotation, *Burden of Averment and Proof as to Exception in Criminal Statute on Which the Prosecution Is Based*, 153 A.L.R. 1218, 1226 (1944).
*Nobriga*, 10 Haw.App. at 357 n. 1, 873 P.2d at 112 n. 1.

*Criminal Evidence* § 20, at 35 (C. Torcia 13th ed.1972).

... [W]hen the exception appears somewhere other than in the enacting clause, and is thus a distinct substantive exception or proviso, the burden is on the defendant to bring forward evidence of exceptive facts that constitute a defense. Annotation, 153 A.L.R. at 1277–78; 1 *Wharton's Criminal Evidence* § 20, at 35. The prosecutor is not required in such instances to negative, by proof in advance, exceptions not found in the enacting clause. 1 *Wharton's Criminal Evidence* § 20, at 33–34.

*Nobriga,* 10 Haw.App. at 358, 873 P.2d at 112–13.

■ HRS § 431:10C–104(a) *refers* to the provisions regarding self-insurance in HRS 431:10C–105, but those provisions are not themselves located within the enacting clause of the offense of operation without no-fault insurance. Prior to the enactment of HRS ch. 431, the provisions of HRS §§ 431:10C–104 and 431:10C–105 were included as subparts (a)(1) and (a)(2), respectively, of the former HRS § 294–8.[8] Specifically, the self-insurance exception did not appear in HRS § 294–8(a)(1), the "enacting clause" defining the crime of operation without no-fault insurance, but rather in HRS § 294–8(a)(2). *See supra* note 8. When it repealed HRS ch. 294 and reorganized and reenacted the majority of its provisions in HRS ch. 431, the legislature expressly declared, in HRS § 431:1–100.5, that the purpose of the new chapter was "to recodify, without substantive change, the insurance law in effect immediately prior to July 1, 1988." Thus, we are unable to discern any legislative intent to alter the defendant's burden of production regarding self-insurance by virtue of the foregoing statutory reorganization. Moreover, interpreting HRS §§ 431:10C–104 and 431:10C–105 to require the prosecution to disprove self-insurance in every case would defeat the declared purpose of HRS § 431:10C–107, discussed above, by increasing the difficulty of proving lack of coverage. Inasmuch as self-insurance is likely to be .quite rare, it would be absurd to require the prosecution to disprove it in every case.

"[O]ur foremost obligation [when interpreting a statute] is to ascertain and give effect to the intention of the legislature, which is obtained primarily from the language contained in the statute itself." *State v. Aluli,* 78 Hawai'i 317, 320, 893 P.2d 168, 171 (1995) (citation omitted).... "The legislature is presumed not to intend an absurd result, and legislation will be construed to avoid, if possible, inconsistency, contradiction[,] and illogicality." *State v. Arceo,* 84 Hawai'i 1, 19, 928 P.2d 843, 861 (1996) (citation and internal quotation marks omitted).

*Bautista,* 86 Hawai'i at 209, 948 P.2d at 1050–51. Accordingly, self-insurance should be considered a defense,[9] which the prosecution need not disprove unless *some* evidence to support the defense has been introduced.[10]

---

**8.** HRS § 294–8 (1985) provided in relevant part:

**Conditions of operation and registration.** (a)(1) No person shall operate or use a motor vehicle upon any public street, road, or highway of this State at any time unless such motor vehicle is insured at all times under a no-fault policy. Every owner of a motor vehicle used or operated at any time upon any public street, road, or highway of this State shall obtain a no-fault policy upon such vehicle which provides the coverage required by this article and shall maintain the no-fault policy at all times for the entire motor vehicle registration period. (2) The requirements of this subsection may be satisfied by any owner of a motor vehicle· if:

(A) Such owner provides a surety bond, proof of qualifications as a self insurer, or other securities affording security substantially equivalent to that afforded under a no-fault policy, providing coverage at all time for the entire motor vehicle registration period, as determined and approved by the commissioner under regulations, and

(B) The commissioner is satisfied that in case of injury or death or property damage, any claimant would have the same rights against such owner as the claimant would have had if a no-fault policy had been applicable to such vehicle.

**9.** Self-insurance is not expressly designated in HRS § 431:10C–105 or elsewhere as an affirmative defense, and the statute gives no indication that the legislature intended it to be one. Therefore, it is not an affirmative defense pursuant to HRS § 701–115(3). *Cf. Bolosan,* 78 Hawai'i at 89 & n. 7, 890 P.2d at 676 & n. 7 (holding that a borrower's lack of knowledge of a vehicle's uninsured status is not an affirmative defense).

**10.** Likewise, the exceptions listed in HRS § 431:10C–104(d), regarding antique automo-

To the extent that *Shamp* holds to the contrary, it is hereby overruled.

We therefore hold (1) that the prosecution adduced substantial evidence that neither Lee nor the vehicle he was operating were insured pursuant to a no-fault policy and (2) that it was not subject to the burden of disproving the defense of self-insurance.

2. *The prosecution was not required to prove that Lee was the owner of the vehicle or otherwise to identify the registered owner.*

■ Lee next argues that the prosecution failed to prove that he was the owner of the vehicle or to otherwise identify the registered owner. He notes that the "[e]vidence presented by the state shows [Lee] to be a vehicle operator and no more[.]" Granted, HRS § 431:10C–104(b) provides in relevant part that "[e]very *owner* of a motor vehicle used or operated at any time upon any public street, road or highway of this State shall obtain … and … maintain [a] no-fault policy at all times[.]" (Emphasis added.) Thus, *that* subsection applies exclusively to vehicle owners, whether or not they are personally operating the vehicle at the time the statutory offense is committed. However, HRS § 431:10C–104(a) does not apply exclusively to vehicle owners. *That* subsection provides in relevant part that "*no person* shall *operate* or *use* a motor vehicle … unless such motor vehicle is insured at all times under a no-fault policy[.]" (Emphases added.) In other words, one may violate HRS § 431:10C–104 in two ways: (a) by *operating* or *using* a vehicle without no-fault insurance; or (b) by *owning* a vehicle that is "used or operated at any time upon any public street, road or highway" without maintaining no-fault insurance on the vehicle. Inasmuch as the prosecution made out a prima facie case of violation of HRS § 431:10C–104(a), the identity of

the owner of the vehicle that Lee drove was irrelevant.

3. *The prosecution adduced sufficient evidence of the requisite state of mind.*

■ Lee next argues that the prosecution failed to prove that he possessed the requisite state of mind to commit the offense of operation without no-fault insurance. In support of his argument, he first asserts that he was not the owner of the vehicle he operated. He cites *Bolosan* and *Shamp*, presumably for the proposition that

[t]he borrower of a motor vehicle has a statutory right to reasonably believe that the borrowed motor vehicle is insured. Evidence that the defendant borrowed and operated upon a public street a motor vehicle that was not insured under a no-fault policy is sufficient evidence to sustain [the lack of knowledge defense].

*Bolosan*, 78 Hawai‘i at 91 n. 9, 890 P.2d at 678 n. 9 (construing the "good faith lack of knowledge defense" codified in HRS § 431:10C–117 [11] (quoting *Kahaunaele*, 10 Haw.App. at 531, 879 P.2d at 571)) (brackets in original). *See also Shamp*, 86 Hawai‘i at 338, 949 P.2d at 178 (following *Bolosan*):

■ As noted *supra* in section I, no evidence regarding the ownership of the vehicle was adduced at trial. Lee apparently attempted to adduce such evidence by way of his two "declarations," which he submitted in support of his "Motion for Reconsideration or Motion for New Trial." Of course, his declarations, as out-of-court statements, constituted hearsay and were therefore inadmissible as evidence. *See* Hawai‘i Rules of Evidence (HRE) Rules 801(3) (defining hearsay) and 802 (providing that hearsay is generally inadmissible) (1993). In any case, Lee's "declarations," proffered posttrial as they were, could

biles and vehicles registered by the federal government, should be considered defenses to HRS §§ 431:10C–104(a) and (b) because they are not listed in the "enacting clauses" of the offenses defined in those subsections.

11. At the time of this court's opinion in *Bolosan*, HRS § 431:10C–117(3) (1993) provided in relevant part:

[A]ny person cited under this section shall have an opportunity to present a good faith defense, including but not limited to lack of knowledge or proof of insurance. The general penalty provision of this section shall not apply to:

. . .

(C) Any operator of a borrowed motor vehicle if the operator holds a reasonable belief that the subject vehicle is insured.

not alter the sufficiency of the prosecution's evidence at trial one way or the other.

Lee suggests, without explaining his reasoning, that, where it is unclear whether a driver is the registered owner of a vehicle, the presumption should be that he or she is not the owner. In fact, inasmuch as a good faith lack of knowledge regarding the insured status of a borrowed vehicle is a *defense* pursuant to HRS § 701–115, *see Bolosan*, 78 Hawai'i at 89, 890 P.2d at 676, Lee bore the burden of production with respect to it, and no evidence was adduced at trial that he had borrowed a vehicle owned by another. *See supra* section III.A.1. Accordingly, Lee cannot rely upon the borrower's "good faith lack of knowledge" defense.

■ In *State v. Lesher*, 66 Haw. 534, 669 P.2d 146 (1983), this court held that, pursuant to HRS § 702–204,[12] the state of mind required for a violation of HRS § 294–8(a)(1) (the predecessor of HRS § 431:10C–104, as noted above) is intent, knowledge, or recklessness.

> [G]iven the difficulty of proving the requisite state of mind by direct evidence in criminal cases, "[w]e have consistently held that ... proof by circumstantial evidence and reasonable inferences arising from circumstances surrounding the [defendant's conduct] is sufficient.... Thus, the mind of an alleged offender may be read from his acts, conduct and inferences fairly drawn from all the circumstances." *State v. Sadino*, 64 Haw. 427, 430, 642 P.2d 534, 536–37 (1982) (citations omitted); *see also State v. Simpson*, 64 Haw. 363, 373 n. 7, 641 P.2d 320, 326 n. 7 (1982).

*State v. Mitsuda*, 86 Hawai'i 37, 44, 947 P.2d 349, 356 (1997) (quoting *State v. Batson*, 73 Haw. 236, 254, 831 P.2d 924, 934, *reconsideration denied*, 73 Haw. 625, 834 P.2d 1315 (1992) (footnote omitted)) (some brackets in original and some added). In the absence of any evidence implicating the "good faith borrower" defense, the district court could reasonably have inferred from the fact that Lee drove the vehicle without insurance that he did so either intentionally, knowingly, or

recklessly. Accordingly, Lee's requisite state of mind was supported by substantial evidence.

> B. *Assuming, Arguendo, That The District Court Failed To Comply With The Requirements Of HRS § 805–13, Lee's Conviction Was Nevertheless Valid.*

■ Lee urges that his conviction must be reversed because the district court failed to comply with the requirements of HRS § 805–13(b). During the period applicable to this case, HRS § 805–13(b) provided in relevant part that, "[i]n *all* cases of alleged violations" of the no-fault insurance laws, "the court shall require the appearance of the driver cited *and the registered owner* of the vehicle." *See supra* note 2 (emphases added). The subsection further provided that, "[i]f the registered owner is not the driver, the registered owner shall be cited by service of the citation on the driver who shall be deemed the owner's agent for purposes of service and by naming the owner jointly with the driver in the citation."

Assuming, *arguendo*, that Lee was not the registered owner of the vehicle he was driving, the district court's failure to comply with HRS § 805–13 would not constitute a basis for reversing Lee's conviction. In support of his argument to the contrary, Lee relies, once again, upon *Shamp*. In *Shamp*, the defendant contended that his conviction of HRS § 431:10C–104 was reversible based on the district court's failure to comply with HRS § 805–13. 86 Hawai'i at 334, 949 P.2d at 174. The *Shamp* court ruled that "[w]e need not address this issue because we hold that the State failed to prove one of the three necessary elements of an HRS § 431:10C–104 violation [—the state of mind of the vehicle operator—], and, therefore, the district court committed plain error in convicting [the d]efendant." *Id.* Nevertheless, the *Shamp* court discussed the point of error implicating HRS § 805–13(b) "in order to guide the district court, the prosecutor's office, and enforcement officers[.]" *Id.*

---

12. HRS § 702–204 (1993) provides in relevant part that "[w]hen the state of mind required to establish an element of an offense is not specified

by law, that element is established if, with respect thereto, a person acts intentionally, knowingly, or recklessly."

Because the district court in *Shamp* had failed to cause the registered owner to appear, despite evidence that the driver of the vehicle had merely borrowed it, the *Shamp* court held that a "prima facie procedural error" had transpired. *Id.* at 342, 949 P.2d at 182. The *Shamp* court further held that the arresting officer had erred in failing to cite the registered owner, as mandated by HRS § 805–13(b). *Id.*

The *Shamp* court concluded in relevant part as follows:

> We hold that the district court committed plain error when it convicted Defendant of violating HRS § 431:10C–104 because the State failed to prove one of the three necessary elements of the offense. The State must prove each of the elements because, otherwise, a serious miscarriage of justice may occur: The wrong defendant may be convicted (*the proper defendant being the vehicle's registered owner*). We therefore reverse the district court's conviction of Defendant in regards to the HRS § 431:10C–104 violation. We further conclude that the district court erred when it failed to require the owner of the vehicle to appear in court, pursuant to HRS § 805–13. Section 805–13 properly applies to chapter 431:10C violations, in particular HRS § 431:10C–104.
>
> ... *Enforcing the requirement that the registered owner appear in court will ... help the district court and the State to determine who the true violator of the statute is: the vehicle's registered owner, or, additionally, the vehicle's driver.* We therefore strongly encourage prosecutors, the district courts, and enforcement officers to follow the procedures set forth in HRS § 805–13(b).

*Id.* at 343, 949 P.2d at 183 (emphases added).

 Lee seizes on the first of the phrases highlighted above, arguing that HRS § 805–13(b) must be followed in order for the district court to determine who the "proper defendant" is. However, as the *Shamp* court observed in the second of the highlighted phrases, it is clear from the structure of HRS § 431:10C–104 that the "proper defendant" may be either a vehicle's owner, *see* HRS § 431:10C–104(b), or its operator, *see* HRS

§ 431:10C–104(a), or both. *See also supra* section III.A.2. As the *Shamp* court further observed, the legislature's stated purpose underlying the bill that enacted HRS § 805–13 was to "provide[ ] the necessary teeth to the no-fault enforcement provision[ ] and ... reduce the uninsured motorist population." 86 Hawai'i at 340–41, 949 P.2d at 180–81 (quoting Sen. Stand. Comm. Rep. No. 671–78, in 1978 Senate Journal, at 1060; Hse. Stand. Comm. Rep. No. 544–78, in 1978 House Journal, at 1634). *See also supra* section III.A.1. Inasmuch as the presence of the registered owner is not required to prove that a defendant has violated HRS § 431:10C–104(a) by operating without no-fault insurance, *see supra* section III.A.2, it would violate the spirit of the legislation to hold that the owner's absence constitutes a basis for overturning the operator's conviction. Although, as the ICA did in *Shamp*, we "encourage prosecutors, the district courts, and enforcement officers to follow the procedures set forth in HRS § 805–13(b)," we hold that a violation of those procedures is not reversible error with respect to the conviction of an operator of an uninsured vehicle.

### C. The 1840 Constitution Of The Kingdom Of Hawai'i No Longer Governs The Hawai'i State Legislature.

 Lee's final argument is that HRS ch. 413 violates article III of the 1840 Constitution of the Kingdom of Hawai'i, which, he asserts, remains in force through the provisions of HRS § 1–1 (1993). The 1840 Constitution was Hawaii's first written constitution. Anne Feder Lee, *The Hawaii State Constitution*, 2–3 (1993) [hereinafter, *Lee*]. New constitutions were adopted three times during the monarchy—in 1852, 1864, and 1887. *Id.* at 3–4. As Lee himself concedes in his opening brief, the Republic of Hawai'i, after overthrowing the monarchy, enacted the Constitution of 1894, which expressly abrogated all prior constitutions. *See* Haw. Const. of 1894 art. 91 ("This Constitution[,] when promulgated, shall thereupon become the Supreme Law of the Republic, and the Constitution promulgated on the 7th day of July, 1887, and all other Constitutions at any time the Supreme Law in the Hawaiian Is-

lands, ... are hereby expressly abrogated and declared to be null and void."). Pursuant to the Organic Act, the United States annexed Hawai'i as a territory, expressly repealing the "constitution of the Republic of Hawaii" and substituting its own fundamental law. *See* Organic Act §§ 3, 7; Act of April 30, 1900, c. 339, 31 Stat. 141, 157, *reprinted in* 1 HRS 43, 47 (1993) (as amended). Hawaii's *state* constitution became effective in 1959, when Hawai'i was admitted into the Union as a state. *Lee* at 7–10. Section 3 of The Admission Act, Act of March 18, 1959, Pub.L. 86–3, 73 Stat 4, *reprinted in* 1 HRS 90 (1993), providing "for the admission of the State of Hawaii into the Union," mandated that "[t]he constitution of the State of Hawaii shall always be republican in form and shall not be repugnant to the Constitution of the United States and the principles of the Declaration of Independence." The Hawai'i Constitution has been amended several times, most notably as a result of the constitutional conventions of 1968 and 1978. *Lee* at 11–20.

 It is elementary that

[w]hen ... a[new] Constitution takes effect, it is a new departure in the government of the country, inasmuch as it states anew the principles upon which the government is to be administered, and rearranges the distributions and limitations of sovereign powers. What is not changed is re-affirmed. The new statement of the fundamental law takes the place of the old.

*Ahlo v. Smith,* 8 Haw. 420, 423 (1892) (holding that the requirements for voting rights provided for in the Constitution of 1864 had been abrogated by the new requirements of the Constitution of 1887). In other words, successive constitutions are consecutive rather than concurrent or cumulative, unless they expressly provide otherwise.

Although the ICA has suggested that it is an open legal question whether the "Kingdom of Hawai'i" still exists, *see State v. Lorenzo,* 77 Hawai'i 219, 883 P.2d 641 (App. 1994), and *State v. French,* 77 Hawai'i 222,

883 P.2d 644 (App.1994), it is clear that the various constitutions of the kingdom do not bind the current government of the state of Hawai'i.

Lee's argument that HRS § 1–1 somehow reenacted the 1840 Constitution is specious. That section provides:

> **Common law of the State; exceptions.** The common law of England, as ascertained by English and American decisions, is declared to be the common law of the State of Hawaii in all cases, except as otherwise expressly provided by the Constitution or laws of the United States, or by the laws of the State, or fixed by Hawaiian judicial precedent, or established by Hawaiian usage; provided that no person shall be subject to criminal proceedings except as provided by the written laws of the United States or of the State.

HRS § 1–1 acknowledges laws "established by Hawaiian usage"; however, the phrase is employed only in the context of the proposition that "Hawaiian usage," among other authorities, may trump rules imported from the "common law of England." HRS § 1–1 does not (as, indeed, it cannot) establish the supremacy of the 1840 Constitution over the current state constitution, or somehow render the documents concurrent.

Accordingly, regardless of whether the no-fault laws might have offended the provisions of the 1840 Constitution, Lee's argument fails.

## IV. *CONCLUSION*

Based on the foregoing reasoning, we affirm the district court's judgment, conviction, and sentence.