<span style="color:red">**Electronically Filed
Intermediate Court of Appeals
CAAP-13-0005863
27-FEB-2015
07:55 AM**</span>

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

---oOo---

STATE OF HAWAI'I, Plaintiff-Appellee, v.
MAX C.K. BOWMAN, Defendant-Appellant

NO. CAAP-13-0005863

APPEAL FROM THE DISTRICT COURT OF THE THIRD CIRCUIT
(CASE NO. 3DTC-13-067572)

FEBRUARY 27, 2015

FOLEY AND FUJISE, JJ.,
WITH NAKAMURA, C.J. CONCURRING SEPARATELY

<u>OPINION OF THE COURT BY FOLEY, J.</u>

Defendant-Appellant Max Bowman (**Bowman**) appeals from a Judgment and Notice of Entry of Judgment entered on November 8, 2013, in the District Court of the Third Circuit[1] (**district court**) convicting him of spilling loads on highways in violation of Hawaii Revised Statutes (**HRS**) § 291C-131(a) (2007 Repl.)

---

[1] The Honorable Melvin H. Fujino presided.

(**subsection (a)**).[2]

On appeal, Bowman contends (1) that the written complaint and oral charge were insufficient because they did not put him on notice of the elements of HRS § 291C-131(c) (2007 Repl.) (**subsection (c)**),[3] which applies to vehicles transporting agricultural produce; (2) that subsection (c) is an offense for which Plaintiff-Appellee State of Hawai'i (**State**) had the initial burden to prove beyond a reasonable doubt; (3) that Bowman cannot be charged for violating subsection (c) because the State did not prove he was the "owner" of the vehicle; and (4) that the State failed to prove all elements of subsection (c) beyond a reasonable doubt.[4]

## I.  BACKGROUND

On August 30, 2013, Bowman, who identifies himself as a farmer, was transporting cabbage from his field in Honoka'a to Pa'auilo.  Bowman was driving a "green flatbed pickup [truck]" (**vehicle**) with the cabbage in uncovered containers in the back of the vehicle.  No evidence was introduced at trial as to who owned

---

[2]     HRS § 291C-131(a) provides:

§ 291C-131 Spilling loads on highways; penalties. (a) No vehicle shall be moved on any highway, unless the vehicle is so constructed, covered, or loaded as to prevent any of its load other than clear water or feathers from live birds from dropping, sifting, leaking, blowing, spilling, or otherwise escaping therefrom, except that sand may be dropped for the purpose of securing traction, or water or other substance may be sprinkled on a highway in cleaning or maintaining the highway.

[3]     HRS § 291C-131(c) provides:

§ 291C-131 Spilling loads on highways; penalties.

.  .  .  .  .

(c) Vehicles carrying agricultural produce from fields during harvesting shall be exempt from the requirements of this section but the owner of the vehicle must provide for the reasonable removal of all such produce spilled or dropped on the highway.

[4]     Bowman's points on appeal in his opening brief fails to comply with Hawai'i Rules of Appellate Procedure (**HRAP**) Rule 29(b)(4).  Bowman's counsel is warned that future noncompliance with HRAP Rule 28 may result in sanctions.

the vehicle.

As Bowman drove south on Route 19 to Pa'auilo, Officer Romeo Fuiava (**Officer Fuiava**) was traveling in the opposite direction and passed Bowman on the road. Officer Fuiava observed "either cabbage or lettuce" in back of Bowman's vehicle. About a half a mile after Officer Fuiava passed Bowman, he "started seeing the lettuce on the side of the road and some on the road."[5]

Officer Fuiava did not see any produce on the road when he passed the same spot on the road about a half hour to forty-five minutes before seeing Bowman. Officer Fuiava also did not see any other vehicles transporting produce during his shift that day.

Upon seeing the produce on the road, Officer Fuiava turned around to "catch up" to the green flatbed truck that had previously passed. Officer Fuiava "caught up" to the vehicle in Pa'auilo in the parking lot of "Earl's store." The vehicle in the parking lot was the same vehicle that Officer Fuiava had seen on Route 19. Officer Fuiava made contact with the driver of the vehicle, whom he identified as Bowman. Officer Fuiava recalled that he explained to Bowman why Bowman had been stopped, but could not remember what was said during their conversation. Officer Fuiava issued Bowman a citation for violating subsection (a).

On November 7, 2013, the case proceeded to a bench trial with Bowman appearing pro se. During the bench trial, the prosecutor orally arraigned Bowman, stating:

> On or about the 28th day of August, 2013, in Hamakua, state and county of Hawaii, Max Bowman was the operator of a motor vehicle being moved on a highway, which vehicle was not so constructed, covered, or loaded as to prevent any of its load from dropping, sifting, leaking, blowing, spilling, or otherwise escaping therefrom, thereby a violation of Section 291C-101(a) (sic), [HRS] as Amended.

Bowman testified on his behalf, expressing a belief that he was

---

[5]    The court later confirmed that the spilled produce was cabbage, not lettuce.

mischarged under subsection (a) and that he thought subsection (c) was a more applicable charge. Bowman stated:

> Well, with, you know, respect to our prosecuting attorney, I just feel like I've been mischarged. It was referred under [subsection (a)], which is where he got the no vehicle shall be moved on any highway unless the vehicle is so constructed, dropping, sifting. Anyway, the provision I feel is more applicable is [subsection (c)]: "Vehicles carrying agricultural produce from fields during harvesting shall be exempt from the requirements of this section, but the owner of the vehicle must provide for a reasonable removal of all such produce spilled or dropped on the highway."

(Emphasis added.) After the district court suggested that Bowman testify to facts in support of subsection (c), Bowman further testified:

> I'm a farmer. I was carrying agricultural produce from my field during harvesting, at which point some of it did spill on the highway. As far as the reasonable removal section goes, it couldn't have been much. It was trimmings. I actually drove past that section of the road later in the day, did not see any of it. I can only imagine the wind blew it off the road to decompose in a matter of days on the side, or it had been run over sufficiently and evaporated on the road. It could not have been more than one pound or two pounds of cabbage, maybe 20 leaves. And if reasonable removal is any indication, I feel risk of life and limb, running onto the road, grabbing three or four leaves of cabbages as opposed to letting it decompose naturally does not sounds reasonable to me.

(Emphases added.) On cross-examination, Bowman testified that he was carrying his load of cabbage for work that day and that he returned to the location where he had dropped the cabbage about three to four hours after receiving his citation. Bowman did not dispute that he spilled cabbage trimmings on the highway that day nor did he dispute that he transported his load in uncovered containers. Instead, Bowman contended that, pursuant to subsection (c), he "reasonabl[y] removed" the trimmings from the road when he chose to allow the trimmings to "decompose naturally."

After hearing the testimony of Officer Fuiava and Bowman, the district court determined that, although subsection (c) could have been applied to the facts of the case, Bowman did not act reasonably to remove all of the products that were spilled or dropped when he "just left it on the road." The

4

district court reasoned that "had [Bowman] gone and picked it up, [he] would have been acquitted of this charge." The court further reasoned that, under subsection (c), Bowman "was pretty much [exempt] from having to cover this load, but if it falls, [he's] going to have to go and pick it up." The district court ultimately determined that the State had proven its case beyond a reasonable doubt and found Bowman guilty of violating subsection (a). The district court imposed a $250 fine and a $7 driver education assessment fee on Bowman.

On November 29, 2013, Bowman, represented by counsel, filed a timely notice of appeal.

## II. STANDARD OF REVIEW

### A. Statutory Interpretation

> First, the fundamental starting point for statutory interpretation is the language of the statute itself. Second, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning. Third, implicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. Fourth, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists. And fifth, in construing an ambiguous statute, the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning.

State v. Ribbel, 111 Hawaiʻi 426, 431, 142 P.3d 290, 295 (2006) (emphases omitted) (quoting Peterson v. Hawaii Elec. Light Co., 85 Hawaiʻi 322, 327-28, 944 P.2d 1265, 1270-71 (1997), superseded on other grounds by HRS § 269-15.5 (Supp.1999)).

### B. Sufficiency of Charge

"Whether an indictment or complaint sets forth all the essential elements of a charged offense is a question of law, which [the appellate court reviews] under the de novo, or right/wrong, standard." State v. Young, 107 Hawaiʻi 36, 39, 109 P.3d 677, 680 (2005) (citation, internal quotation marks, brackets, and ellipsis omitted). See also State v. Walker, 126 Hawaiʻi 475, 485, 273 P.3d 1161, 1171 (2012).

A criminal charge serves multiple purposes. To

5

> initiate the criminal process, a charge must sufficiently state an offense to establish the court's jurisdiction over a case. State v. Cummings, 101 Hawai'i 139, 142, 63 P.3d 1109, 1112 (2003). The sufficiency of a charge also implicates an accused's rights under the Hawai'i Constitution, article I, sections 5, 10, and 14. First, under article I, section 5, "No person shall be deprived of life, liberty or property without due process of law." Second, under article I, section 14, an accused is entitled to adequate notice of the charges against him or her: "In all criminal prosecutions, the accused shall enjoy the right to be informed of the nature and cause of the accusation." Third, under article I, section 10, an indictment must be sufficiently specific to protect a person from being charged twice for the same offense: "Nor shall any person be subject for the same offense to be twice put in jeopardy."

State v. Nesmith, 127 Hawai'i 48, 52, 276 P.3d 617, 621 (2012) (brackets and ellipsis omitted).

C. Sufficiency of Evidence

> We have long held that evidence adduced in the trial court must be considered in the strongest light for the prosecution when the appellate court passes on the legal sufficiency of such evidence to support a conviction; the same standard applies whether the case was before a judge or a jury. The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact. Indeed, even if it could be said in a bench trial that the conviction is against the weight of the evidence, as long as there is substantial evidence to support the requisite findings for conviction, the trial court will be affirmed.

> "Substantial evidence" as to every material element of the offense charged is credible evidence which is of sufficient quality and probative value to enable [a person] of reasonable caution to support a conclusion. And as trier of fact, the trial judge is free to make all reasonable and rational inferences under the facts in evidence, including circumstantial evidence.

State v. Eastman, 81 Hawai'i 131, 135, 913 P.2d 57, 61 (1996) (quoting State v. Pone, 78 Hawai'i 262, 265, 892 P.2d 455, 458 (1995) (quotation marks omitted)).

### III. DISCUSSION

A. HRS § 291C-131

Bowman contends that he was mischarged under subsection (a) and that the agricultural exception in subsection (c) was the applicable offense for which he should have been charged. In contrast, the State contends that, under Hawai'i case law, the exception in subsection (c) constitutes a defense that the State

6

did not need to include in its charge. We begin our analysis of whether subsection (c) constitutes an offense or defense by looking to the words of the statute.

HRS § 291C-131 provides, in relevant part:

> §291C-131 Spilling loads on highways; penalties. (a) No vehicle shall be moved on any highway, unless the vehicle is so constructed, covered, or loaded as to prevent any of its load other than clear water or feathers from live birds from dropping, sifting, leaking, blowing, spilling, or otherwise escaping therefrom, except that sand may be dropped for the purpose of securing traction, or water or other substance may be sprinkled on a highway in cleaning or maintaining the highway.
>
> . . . .
>
> (c) Vehicles carrying agricultural produce from fields during harvesting shall be exempt from the requirements of this section but the owner of the vehicle must provide for the reasonable removal of all such produce spilled or dropped on the highway.
>
> . . . .
>
> (g) Violation of this section shall be considered an offense as defined in section 701-107(5),[6] shall not be subject to the provisions of chapter 291D, and shall subject the owner or driver of the vehicle, or both, to the following penalties without possibility of probation or suspension of sentence:
>
> > (1) For a first violation, by a fine of not less than $250 and not more than $500.
> >
> > (2) For a second violation involving a vehicle or driver previously cited under this section within one year:
> >
> > > (A) Suspension of the vehicle registration or suspension of the license of the driver, or both, for not less than five working days but not more than ten working days; and
> > >
> > > (B) A fine of not less than $500 and not more than $750.
> >
> > (3) For a third or subsequent violation involving a vehicle or driver previously cited under this section within one year:
> >
> > > (A) Suspension of the vehicle registration or suspension of the license of the driver, or both, for

---

[6]      HRS § 701-107(5) (2014 Repl.) provides, in relevant part, that "[a]n offense defined . . . by any other statute of this State constitutes a violation if it is so designated . . . in the law defining the offense . . . ."

a period of thirty calendar days;
and

(B)    A fine of not less than $750 and not
more than $1,000.

In imposing a fine under this subsection, the court,
in its discretion, may apportion payment of the fine between
the driver of the vehicle and the owner of the vehicle
according to the court's determination of the degree of
fault for the violation.

(Emphasis added.)

Subsection (a) represents a general requirement that
all vehicles must be constructed or covered so to prevent
spilling a vehicle's load on a highway. Subsection (c) is an
exception to the requirements of HRS § 291C-131 for vehicles
transporting agricultural produce after harvest.

We are guided by the principle that the court's
"foremost obligation when interpreting a statute is to ascertain
and give effect to the intention of the legislature, which is
obtained primarily from the language contained in the statute
itself." State v. Lee, 90 Hawai'i 130, 138, 976 P.2d 444, 452
(1999) (quoting State v. Bautista, 86 Hawai'i 207, 209, 948 P.2d
1048, 1050 (1997) (brackets omitted)). "Yet, even if the plain
language of a statute is clear, [the Hawai'i Supreme Court] can
nevertheless consider legislative history to ensure its
interpretation of the statute does not produce an absurd result
contrary to legislative intent." Friends of Makakilo v. D.R.
Horton-Schuler Homes, LLC, 134 Hawai'i 135, 139, 338 P.3d 516,
520 (2014).

HRS § 291C-131 was first enacted in 1976. 1976 Haw.
Sess. Laws Act 137, § 1 at 252-53. The purpose of the statute
was to "prevent the spilling of loads from vehicles on highways"
because the legislature believed the laws in place did little to
prevent "vehicles with uncovered cargo" from "being moved or
driven on highways posing potential hazards and damage to other
vehicles." H. Stand. Comm. Rep. No. 346-76, in 1976 House
Journal, at 1431. The agricultural exception was included in the
original text of the statute. 1976 Haw. Sess. Laws Act 137, § 1

at 252-53.  The legislature enacted and retained the exception for agricultural produce because it believed that the "application of the provisions of [HRS § 291C-131] to vehicles carrying agricultural produce would cause great hardship to the agricultural industry, the Hawaii sugar industry in particular." S. Stand. Comm. Rep. No. 309, in 1977 Senate Journal, at 987.

In 1986, the legislature enacted the statute's penalty subsection and provided that "[v]iolations of [HRS § 291C-131] shall subject the owner or driver of the vehicle, or both" to graduated penalties.  1986 Haw. Sess. Laws Act 175, § 1 at 310-11.  In 2000, the penalty section was amended to its current text in HRS § 291C-131(g), providing that a "violation of this section shall be considered an offense as defined in section 701-107(5) . . . and shall subject the owner or driver of the vehicle, or both" to graduated penalties.  2000 Haw. Sess. Laws Act 100, § 1 at 211.  HRS § 291C-131's legislative history provides little to no insight into whether the legislature contemplated treating subsection (c) as an offense or whether the legislature intended to apply the graduated penalties to violations of subsection (c).  Thus, nothing in the legislative history of HRS § 291C-131 supports the conclusion that the legislature intended to treat subsection (c) as an offense.

Bowman suggests that we interpret subsection (c) as an offense for agricultural vehicles that fail to reasonably remove spilled produce.  However, interpreting subsection (c) in such a manner would yield an absurd result.  See Lee, 90 Hawaiʻi at 138, 976 P.2d at 452 ("The legislature is presumed not to intend an absurd result, and legislation will be construed to avoid, if possible, inconsistency, contradiction, and illogicality." (Brackets omitted.))  Application of subsection (c) requires proof of threshold elements of fact, such as whether the vehicle was carrying agricultural produce from fields and whether the vehicle was carrying produce during harvesting, that are squarely within the knowledge and control of the defendant.  The State would not have access to the information necessary to properly

charge a defendant under subsection (c). This practical concern is one factor that Hawai'i courts have considered in construing statutory exceptions as defenses. See State v. Jenkins, 93 Hawai'i 87, 107, 997 P.2d 13, 33 (2000); See also State v. Nobriga, 10 Haw. App. 353, 358, 873 P.2d 110, 113 (1994), overruled on other grounds by State v. Maelega, 80 Hawai'i 172, 178-79, 907 P.2d 758, 764-65 (1995), (holding that the general rule that requires the State to establish a fact as part of its case-in-chief is inoperative "when the facts hypothesized in the exceptive provision are peculiarly within the knowledge of the defendant, or the evidence concerning them is within [the defendant's] private control" (citation and internal quotation marks omitted)).

The Hawai'i Supreme Court has adopted the following framework for determining whether a statutory exception is a defense to or an element of an offense:

> The general and well-settled common law rule is that where an exception is embodied in the language of the enacting clause of a criminal statute, and therefore appears to be an integral part of the verbal description of the offense, the burden is on the prosecution to negative that exception, prima facie, as part of its main case.
>
> When the exception appears somewhere other than in the enacting clause, and is thus a distinct substantive exception or proviso, the burden is on the defendant to bring forward evidence of exceptive facts that constitute a defense. The prosecutor is not required in such instances to negative, by proof in advance, exceptions not found in the enacting clause.

Jenkins, 93 Hawai'i at 106-07, 997 P.2d at 32-33 (internal citations, brackets, and ellipses omitted). See State v. Romano, 114 Hawai'i 1, 6, 155 P.3d 1102, 1107 (2007), as amended (Mar. 30, 2007); Lee, 90 Hawai'i at 138, 976 P.2d at 452; Nobriga, 10 Haw. App. at 357-58, 873 P.2d at 112-13 (all holding that when an exception appears somewhere other than in the enacting clause and negatives penal liability, it is to be treated as a defense for which the defendant carries the initial burden of production).

The State cites to Romano in support of its contention that subsection (c) is a defense for which Bowman carried the initial burden of production. In Romano, a defendant was charged

with violating HRS § 712-1200(1) [(1993)] for committing the offense of prostitution. Romano, 114 Hawai'i at 7, 155 P.3d at 1108. HRS § 712-1200(1)[7] establishes when a person commits the act of prostitution, but another subsection of the prostitution statute, HRS § 712-1200(5) [(1993)], provides that "[t]his section shall not apply to any member of a police department, a sheriff, or a law enforcement officer acting in the course and scope of duties, unless engaged in sexual penetration or sadomasochistic abuse." Based on the exception in HRS § 712-1200(5), the defendant in Romano argued that the State carried the burden to prove that she was not a law enforcement officer. Romano, 114 Hawai'i at 3, 155 P.3d at 1104.

The supreme court in Romano determined that because the exception in HRS § 712-1200(5) would "negative" the prostitution offense and was found in a "separate and distinct" subsection of the statute, the exception constituted a defense for which the defendant had the initial burden of production. Id. at 6, 155 P.3d at 1107. The Romano court determined that the State did not have to disprove defendant's defense until defendant adduced evidence that she fell within the exception. Id.; HRS § 701-115(2) (2014 Repl.) ("No defense may be considered by the trier of fact unless evidence of the specified fact or facts has been presented.") The Romano court held that because defendant did not adduce any evidence in support of her defense, the State was not required to negate the defense. Id.

Subsection (a) and subsection (c) of HRS § 291C-131 are analogous to the statutory provisions at issue in Romano. Subsection (a) represents a general requirement that motor vehicles be covered so to prevent spilling loads on highways, while subsection (c) represents an exception to the requirement

---

[7] HRS § 712-1200(1) (1993) provided:

> § 712-1200 Prostitution. (1) A person commits the offense of prostitution if the person engages in, or agrees or offers to engage in, sexual conduct with another person for a fee.

for vehicles transporting agricultural produce from fields during harvesting, so long as the vehicles reasonably remove any produce that may have fallen. Subsection (c) negatives liability under subsection (a) and is also found within a separate and distinct subsection of HRS § 291C-131. Under Romano, subsection (c) constitutes a defense for which Bowman carried the initial burden of production.

B. Sufficiency of Charge

Because we hold that subsection (c) constitutes a defense, the State was not required to include the elements of subsection (c) in its oral charge against Bowman. See State v. Adams, 64 Haw. 568, 569, 645 P.2d 308, 309 (1982) ("It has long been held that indictments need not anticipate and negate possible defenses; rather, it is left to the defendant to show his defenses at trial.") "[T]he sufficiency of the charging instrument is measured, inter alia, by whether it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he or she must be prepared to meet." State v. Cummings, 101 Hawai'i 139, 142, 63 P.3d 1109, 1112 (2003) (citation, internal quotation marks, and brackets omitted). Here, the State's oral charge set forth the essential elements of the subsection (a) offense and, therefore, was sufficient to apprise Bowman of the nature of the State's accusation against him.

C. Sufficiency of Evidence

Bowman contends that the State failed to prove all the elements of subsection (c) beyond a reasonable doubt. In support of his contention, Bowman alleges that "[t]he prosecution did not present any evidence regarding the ownership of the vehicle" and "[t]he prosecution presented no evidence through Officer Fuiava of any efforts or lack of effort to remove the lettuce or cabbage from the highway."

The State carries the burden of proof in two situations: (1) When proving elements of an offense and (2) when negativing the elements of a defense, if the defendant first

12

provides evidence in support of the defense.  Romano, 114 Hawai'i
at 6, 155 P.3d at 1107; see also HRS § 701-115(2).  Because
subsection (c) constitutes a defense, Bowman carried the burden
of production to produce evidence in support of his subsection
(c) defense.  Thus, any failure to present evidence as to one of
the elements of subsection (c) is fatal to Bowman's defense and
not the State's case-in-chief.

There was sufficient evidence to support Bowman's
conviction.  The district court did not make a ruling as to
whether Bowman satisfied the "owner" requirement of subsection
(c), as defined under HRS § 291C-1 (2007 Repl.).[8]  Instead, the
district court determined that Bowman's subsection (c) defense
failed because Bowman failed to reasonably remove the spilled
produce.[9]

During his trial, Bowman testified that when he
returned to the location where he spilled his cabbage trimmings
three to four hours after receiving his citation, he "did not see
any of [the trimmings]" on the road and felt that "risk of life
and limb, running onto the road, grabbing three or four leaves of
cabbage as opposed to letting it decompose naturally [did] not
sound reasonable . . . ."  In response, the district court found
that Bowman did not act reasonably when he "just left [the
trimmings] on the road."  The district court reasoned that "had
[Bowman] gone and picked it up, [he] would have been acquitted of
this charge."

"We have long held that evidence adduced in the trial
court must be considered in the strongest light for the [State]
when the appellate court passes on the legal sufficiency of such

---

[8]     HRS § 291C-1 (Statewide Traffic Code) defines "owner" as "a
person, other than a lien holder, having the property in or title to a
vehicle. The term includes a person entitled to the use and possession of a
vehicle subject to a security interest in another person, but excludes a
lessee under a lease not intended as security."

[9]     Because we affirm the district court's determination that Bowman
did not provide for the reasonable removal of the spilled produce, we need not
determine whether Bowman produced evidence as to the "owner" of the vehicle so
to overcome his burden of production.

evidence to support a conviction[.]"  Eastman, 81 Hawaiʻi at 135, 913 P.2d at 61; Associated Eng'r & Contractors, Inc. v. State, 58 Haw. 322, 322, 568 P.2d 512, 513 (1977) (holding that evidence of a defense is viewed in the light most favorable to the State). While the State carries the ultimate burden of persuasion, it satisfies its burden "when the [trier of fact] believes its case and disbelieves the defense."  HRS § 701-115 cmt. (2014 Repl.); State v. Jhun, 83 Hawaiʻi 472, 483, 927 P.2d 1355, 1366 (1996) ("The prosecution disproves a justification defense beyond a reasonable doubt when the trial court believes the prosecution's case and disbelieves the defendant's case.")  Viewing the evidence in the strongest light for the State and giving due deference to the district court's factual determinations, we hold that there was sufficient evidence to support the district court's finding that Bowman did not reasonably remove the spilled produce and, therefore, did not avail himself of the subsection (c) defense to his subsection (a) charge.

## IV.  CONCLUSION

The Judgment and Notice of Entry of Judgment entered on November 8, 2013 in the District Court of the Third Circuit is affirmed.

On the briefs:

Jo Kim
for Defendant-Appellant.

Jason R. Kwiat
Deputy Prosecuting Attorney
County of Hawaiʻi
for Plaintiff-Appellee.

14